UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM B. SKINNER                                                            PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:10cv358-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, ET AL.                                          DEFENDANTS

ORDER

This § 1983 action is before the Court on motion of Defendant Sheriff Malcolm

McMillin, in his individual capacity, for summary judgment premised on qualified immunity

pursuant to Federal Rule of Civil Procedure 56.  Def.'s Mot. Summ. J. [18].  Plaintiff William B.

Skinner has responded in opposition [82, 83].  The Court, having considered the memoranda and

submissions of the parties, concludes that Defendant McMillin's motion should be granted.

I.        Facts and Procedural History

Plaintiff William B. Skinner filed this action against Hinds County, Mississippi, Sheriff

Malcolm McMillin, the City of Jackson, Sheriff's Deputy Milton Reed, Sheriff's Deputy

Lurenza Clincy, and Jackson Police Officer Keith Booth for various alleged constitutional

violations which occurred between July 1 and August 23, 2007.  Because the instant motion

addresses exclusively Skinner's claims against Sheriff McMillin in his individual capacity, the

Court will summarize only the relevant facts, gleaned primarily from the Complaint.

On July 1, 2007, Jackson Police Officer Booth arrested Skinner and transported him to

the Hinds County Detention Center (HCDC), turning Skinner over to Deputies Reed and Clincy.

During Skinner's intake, he purportedly yelled racial slurs at Clincy, a struggle ensued, and Reed

sprayed Skinner with mace.  Clincy and Reed then placed Skinner in a cell where he yelled racial

slurs at his cellmates and was beaten.  Skinner states that Clincy and Reed allowed and watched the beating before moving him to isolation.

According to Skinner, HCDC repeatedly denied his requests for medical treatment in the weeks following his arrival, thereby allowing his injuries to worsen.  Ultimately, on July 17, an HCDC physician examined Skinner and transferred him to Central Mississippi Medical Center (CMMC).  While he was being treated at HCDC, the City of Jackson Municipal Court called Skinner's case, found him guilty in absentia, and sentenced him to time served.  He was not, however, released from CMMC for another two weeks.  On August 22, Skinner was returned to the HCDC, and the following day, HCDC officials released Skinner from custody and purportedly dropped him off at CMMC, telling him he had a doctor's appointment.  According to Skinner, HCDC demanded Skinner's premature discharge from the hospital to avoid the cost of his medical care.  At the same time, Skinner complains that he should have been taken to Court for his trial and that HCDC did not release him on August 8 but instead "held" him at CMMC for an additional fifteen (15) days in violation of his constitutional rights.

In the instant motion, Sheriff McMillin seeks summary judgment as to all claims asserted against him in his individual capacity, not his official capacity.  With respect to Skinner's federal claims, McMillin invokes the analytical framework applicable to qualified immunity and § 1983 supervisory liability.

II.     Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Finally, it must be noted that Skinner attached over 750 pages of exhibits to his Response, but often neglected to cite any record evidence to support his factual assertions. At other times, Skinner generally cited entire depositions or exhibits without providing the pages supporting his statements.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp*., 602 F.3d 374, 379–80 (5th Cir. 2010) (citations and quotations omitted). The 2010 amendments to Rule 56 now make this abundantly clear. Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." (emphasis added). Moreover, Rule 56(c)(3) now states: "Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record."

In this case, *none* of Skinner's material-factual assertions comply with Rule 56(c)(1), and it would be tempting to simply say that Skinner has failed to support his response. But in the interest of justice, the Court has endeavored to consider the record as a whole. To the extent it may have missed something, the fault rests with Skinner.

III.    Analysis

A.    Federal Claims

Skinner asserts federal claims against McMillin in his individual capacity premised on 42 U.S.C. §§ 1983, 1985 and 1986. As to each, McMillin claims that he is entitled to qualified immunity.

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d

393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

"[Q]ualified immunity generally protects 'all but the plainly incompetent or those who

knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an

entitlement not to stand trial or face the other burdens of litigation." *Austin v. Johnson*, 328 F.3d

204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the

defense.  *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In the

summary judgment posture the court "'looks to the evidence before it (in the light most favorable

to the plaintiff).'"  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies.  "[A]

court addressing a claim of qualified immunity must determine first whether the plaintiff has

adduced facts sufficient to establish a constitutional or statutory violation."  *Collier v.*

*Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201

(2001).  Second, if a violation has been alleged, the court must determine "'whether [the

officers'] actions were objectively unreasonable in light of clearly established law at the time of

the conduct in question.'"  *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless all reasonable officials

in the defendant's circumstances would have then known that the defendant's conduct violated

the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v.*

*Upshur Cnty., TX*, 245 F.3d 447, 457 (5th Cir. 2001).  Thus, "[a]n official is eligible for qualified

immunity even if the official violated another's constitutional rights."  *Id*.  Whether the official

acted with objective reasonableness is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555, U.S. 223, 236 (2009)). In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237.

### 1. Supervisory Liability under § 1983

Section 1983 provides a civil cause of action against persons who violate constitutional rights while acting under color of law. 42 U.S.C. § 1983 (2006). Here, Skinner makes no claim that McMillin was personally involved in the events occurring July 1 to August 23, 2007, only that HCDC falls under McMillin's command. Pl.'s Mem. Opp. Summ. J. [83] at 12. But "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). For supervisory liability to exist "under § 1983 there must be some connection between the [supervising officer's] action and the alleged constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)). For example, "[t]he officials . . . may be liable when enforcement of a policy or practice results in a deprivation of federally protected rights." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citing *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215–16 (5th Cir. 1998)).

To meet this test, Skinner alleges that McMillin's negligence in hiring, training, and supervising HCDC employees constituted deliberate indifference to his constitutional rights.

This approach was considered in *McCully v. City of North Richland Hills*, where the Fifth Circuit reversed the district court's denial of summary judgment and held that supervisory-police officers were not individually liable for the unconstitutional acts of their subordinate arising from the shooting of a criminal suspect during a raid. 406 F.3d 375, 377, 381 (5th Cir. 2005). McCully argued that the supervisors' failure to train or supervise their subordinate constituted deliberate indifference. *Id.* at 378. But the court noted the "stringent standard of fault" required to establish supervisory liability. *Id.* at 381 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). Thus, "[t]o satisfy the deliberate indifference [test], a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). "[A] single incident is usually insufficient to demonstrate deliberate indifference." *Id.* at 382–83 (citations omitted). Finally, where there is a history of widespread abuse, "[t]hen knowledge may be imputed to the supervisory official, and he can be found to have caused the later violation by his failure to prevent it." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982).

In this case, Skinner's constitutional claims can be grouped into three categories: (1) claims arising from the night he was processed into the HCDC; (2) claims related to medical care; and (3) claims related to his trial in absentia.

> a.     Intake

With respect to the night he entered HCDC, Skinner first alleges that Reed used unreasonable force (including mace) to subdue him.  Specifically, Skinner alleges that HCDC policies require training in the use of mace, and when mace is used, a use of force report must be completed and medical attention must be rendered.  Skinner claims—without record citation—that no report was generated and no medical attention dispensed when Reed sprayed him.  He further expresses displeasure that Reed was trained in the use of mace only days before the incident, a fact confirmed by the training certificate attached to Reed's deposition.  Reed Dep. Ex. 9 [82-8].

McMillin counters these allegations with Reed's Incident Report documenting the use of mace on Skinner, Def.'s Mot. Ex. C [18-3], and Physician Progress Notes dated July 2, 2007, indicating that medical personnel examined Skinner following the incident.  Def.'s Mot. Ex. D [18-4].  And although HCDC trained Reed on the use of pepper spray just before the incident, Skinner fails to explain how the timing of the training is problematic.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987) (requiring proof that failure to train was causally connected to constitutional injury).  Ultimately, Skinner failed to establish McMillin's personal involvement in the mace incident, that he acted with deliberate indifference, or that his acts or omissions regarding the use of mace were objectively unreasonable.

Second, Skinner claims that HCDC has a policy that combative inmates should remain handcuffed and be escorted by two deputies; however, he (Skinner) was left alone, uncuffed with Clincy.  Even assuming these events would constitute a violation of that policy, Skinner has not

produced any competent evidence demonstrating that McMillin was deliberately indifferent or that his acts were objectively unreasonable.

Third, Skinner avers that Clincy and Reed allowed other inmates to beat him, following a pattern of such conduct at HCDC.  He claims McMillin was "well aware of many previous incidents of violence at the HCDC," including a similar incident that occurred "two years prior to this incident," in 2005 "yet did nothing to prevent it from happening again."  Pl.'s Resp. [83] at 13.  Skinner cites no supporting evidence for this assertion, and the record paints a different picture.  In his deposition, McMillin explains that he initiated criminal charges against the two deputies involved in the 2005 incident and then ordered all jail staff to undergo three days of retraining in the appropriate use of force.  McMillin Dep. [82-5] at 26, 28, 29, 54, 138.  Neither Clincy nor Reed was involved in the 2005 incident.[1]  Again, these facts fail to show McMillin's personal involvement, that he acted with deliberate indifference, or that McMillin's acts were objectively unreasonable.

　　　　　　　　　b.　　　Medical Care

Skinner claims that HCDC denied him adequate medical care between July 2 and July 17, 2007.  It is well established that "pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials."  *Thompson*, 245 F.3d at 457

---

[1]The Court notes that Skinner attached numerous newspaper articles regarding incidents at the HCDC.  Some of the incidents are irrelevant because they occurred *after* July/August 2007.  But to the extent Skinner submitted these articles as substantive evidence, "[n]ewspaper articles . . . are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay."  *James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008).

(collecting cases).  "A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial  risk of serious harm exists, and he must also draw the inference.'"  *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

HCDC has policies regarding an inmate's request for medical attention, and Skinner himself used those procedures to request medical attention at HCDC.  Though Skinner avers that medical attention was delayed or inadequate, there is no evidence suggesting that McMillin was aware of Skinner's serious medical needs.  In addition, there is no competent-record evidence that McMillin was aware—in July 2007—of any custom or policy of guards ignoring the HCDC's health-related policies.  Absent a widespread history, knowledge is not imputed, and Skinner cannot show deliberate indifference.  *Brewster*, 587 F.3d at 770.  Skinner cited no competent-record evidence on these points and therefore failed to meet his burden of showing McMillin violated his constitutional rights and did so with objective unreasonableness.

Skinner also complains that he was discharged from CMMC, returned to HCDC for release, and dropped off again at CMMC, all so McMillin could avoid further expense for his treatment.  There is no proof McMillin was aware of Skinner's treatment.  But Skinner seeks to hold McMillin individually responsible for the release because, according to him, McMillin has a history of disposing of injured or sick inmates rather than taking financial responsibility for treatment.  But McMillin testified that the Board of Supervisors is responsible for the medical bills of an inmate or detainee and any expenses "belong to the county" and are not part of the sheriff's department budget.  McMillin Dep. [82-5] at 39, 62.

McMillin is entitled to qualified immunity on this claim first because there is no evidence of his personal involvement in Skinner's case or in the alleged policy. And even if McMillin was responsible for the alleged policy—the existence of which is not yet established—Skinner must still show McMillin's acts were objectively unreasonable. *Thompson* 245 F.3d at 457. To do so, he must show violation of a clearly established right. *Id*. Skinner has not, however, shown a clearly established right to remain in prison for purposes of receiving medical care.

3.    Trial

Skinner was tried in absentia in the City of Jackson Municipal Court on August 8, 2007, found guilty, and sentenced to time served. Am. Compl. [72] ¶ 21. At the time, he was undergoing medical treatment at CMMC. Skinner claims that he should have been released on that day, but instead, CMMC held him for an additional fifteen days in violation of his constitutional rights. *Id*. Aside from the apparent contradiction between this claim and the claim that HCDC released him prematurely, there is no allegation that McMillin was aware of or involved in Skinner's trial in absentia or his continued confinement at CMMC. And Skinner has not pointed to any official policy or widespread practice which would trigger supervisory liability.

Skinner does, however, argue that this is not the first time HCDC failed to release a pre-trial detainee when required. As he notes, in *Jones v. City of Jackson*, the Fifth Circuit affirmed the finding that McMillin was not entitled to qualified immunity. 203 F.3d 875 (5th Cir. 2000). The opinion from the divided *Jones* Court was somewhat confusing because although McMillin appeared to have no involvement in Jones's case, the majority nevertheless found that McMillin and one other supervisor could be personally liable because they "allegedly caused Hinds

11

County's exercise of illegal custody over Jones by affirmative acts (*e.g.*, sending the detainer to Jackson City Jail) and omissions (*e.g.*, failing to take Jones before the Circuit Court of Hinds County as the Bench Warrant commanded)." *Id*. at 879.  Justice Garza's dissent urged that McMillin had no personal involvement and should have been granted qualified immunity.  *Id*. at 881–82.  Regardless, the incident addressed in *Jones* occurred in 1994 and did not involve an inmate who was in the hospital under medical care at the time of his trial.

The Court finds that the *Jones* incident, occurring some thirteen years before Skinner's arrest, fails to demonstrate that McMillin's supervision, training, and hiring decisions were so obviously inadequate that a constitutional violation was "obviously likely to result."  *McCully*, 406 F.3d at 381.  Likewise, the *Jones* incident fails to demonstrate a widespread history of abuse triggering imputed knowledge.  *Bowen*, 669 F.2d at 988.  And even assuming a constitutional violation, McMillin's actions were not objectively unreasonable.

Skinner makes one final argument in an effort to avoid qualified immunity, asserting that McMillin is not entitled to protection because the alleged violations regarding his intake, medical care, and trial all resulted from ministerial rather than discretionary functions.  Skinner is correct in stating that qualified immunity is limited to "the performance of discretionary functions."  *Beltran v. City of El Paso*, 367 F.3d 299, 302–03 (5th Cir. 2004) (citation omitted).  But the "ministerial duty" exception to qualified immunity is "extremely narrow."  *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986).  "[I]f an official is required to exercise his judgment, even if rarely or to a small degree," the official's duty would be considered discretionary in nature.  *Id.*  (rejecting argument that officer was not entitled to qualified immunity on § 1983 claim); *see also Beltran*, 367 F.3d at 302–03 (finding that 911 operator

exercised discretion and made "a variety of judgment calls" in the way information was recorded).

Here, McMillin played no role in events about which Skinner complains.  Instead, Skinner hopes to prove supervisory liability for McMillin's alleged negligence in hiring, supervising, and training his subordinates.  Skinner's argument fails to account for this distinction, and he offers no authority suggesting that supervisory claims relate to ministerial functions.  It appears instead that courts view such decisions as involving substantial discretion. *See Patton v. Hinds Cnty. Juvenile Det. Ctr. (Henley-Young)*, No. 3:10–CV–00138–CWR–LRA, 2011 WL 2912897, at *6 (S.D. Miss. July 18, 2011) (finding that similar claims against official in charge of detention center were discretionary under the Mississippi law and noting that "[e]mployment decisions, like that about which Patton complains, are classic discretionary functions").

Finally, Skinner's claims against McMillin—hiring, supervising, and training—are standard avenues for establishing a supervisor's individual liability under § 1983, and qualified immunity is routinely applied in such cases.  Adopting Skinner's argument that these claims relate to ministerial tasks would gut the notion of qualified immunity for supervisory employees.

In sum, the Court finds that McMillin is entitled to qualified immunity as to all § 1983 claims against him in his individual capacity.

2.      Conspiracy Claims

McMillin also argues that Skinner's § 1985 and § 1986 civil conspiracy allegations fall short.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege:  (1) a conspiracy involving two or more persons;  (2) for the purpose of depriving,

13

directly or indirectly, a person or class of persons of the equal protection of the laws;  and (3) an act in furtherance of the conspiracy;  (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994).

Skinner claims that McMillin "conspired with the City of Jackson, and Hinds County personell to prevent medical care to the inmates to save cost; these actions violated the Plaintiff's constitutional right to be free from cruel and inhumane treatment."  Pl.'s Mem. [83] at 20.[2]  Neither Skinner's Complaint nor his Response mentions any allegation that McMillin participated in a conspiracy motivated by class-based animus, so dismissal of his § 1985 conspiracy claim is appropriate.[3]  Further, because a § 1986 neglect-to-prevent-a-conspiracy claim presupposes a § 1985 conspiracy, dismissal of the § 1986 claim is also in order.  *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).[4]

_____

[2]McMillin initially pointed out that he cannot conspire with members of his own sheriff's department, *see Fontenot v. Texas*, 44 F.3d 1004, 1994 WL 733504 at * 4 (5th Cir. Dec. 28, 1994) (unpublished table decision), but Skinner alleges that the conspiracy included Jackson Police Department Officer Kevin Booth, *see* Pl.'s Am. Compl. [72] at 14.

[3]It is unclear, but Skinner may also allege that Clincy, Reed, and Jackson Police Officer Booth placed him in a cell with African American inmates, knowing that he would continue to yell racial slurs causing his fellow cellmates to beat him.  The Court declines to decide whether this allegation would raise a § 1985 race-based-conspiracy claim.  The instant motion deals only with claims involving McMillin, and there is no allegation that McMillin was present when Skinner was placed in the cell on July 1.

[4]Alternatively, McMillin submits that Skinner's § 1986 claim, brought more than one year after the alleged conspiracy, is untimely.  Skinner ignored this argument, and the Court finds it meritorious.  *See* 42 U.S.C. § 1986 (2006).

14

B.      State-Law Claims

Finally, McMillin moves to dismiss Skinner's state-law claims against him in his individual capacity based on various provisions of the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-1 *et seq.*  Skinner does not address this portion of the motion in his response and appears to have abandoned the claims.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. Miss. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").  Regardless, McMillin's unrebutted argument appears meritorious.  The Court concludes that Skinner's state-law claims against McMillin in his individual capacity should be dismissed.

IV.   Conclusion

Based on the foregoing, the Court finds that McMillin's motion for summary judgment should be granted.  Skinner's claims against McMillin in his individual capacity are dismissed.

**SO ORDERED AND ADJUDGED** this the 29th day of September, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

15