IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM B. SKINNER                                                          PLAINTIFF

v.                                                CIVIL ACTION NO. 3:10cv358-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, et al.                              DEFENDANTS

ORDER

This § 1983 action is before the Court on the motion of Defendants Deputy Lurenza Clincy and Deputy Milton Reed, in their individual capacities, for summary judgment premised on qualified immunity. Defs.' Mot. Summ. J. [36].[1] The Court, having considered the submissions of the parties in light of the applicable authority, concludes that Defendants Clincy and Reed's Motion should be granted in part and denied in part.

I.      Facts and Procedural History

Plaintiff William B. Skinner filed this action against Hinds County, Mississippi; Sheriff Malcolm McMillin; the City of Jackson; Clincy and Reed; and Jackson Police Officer Keith Booth, for various alleged constitutional violations that occurred between July 1, and August 23, 2007. Because the instant motion addresses exclusively Skinner's claims against Clincy and Reed in their individual capacities, the Court will summarize only the relevant facts.

On July 1, 2007, Jackson Police Officer Booth arrested Skinner and transported him to the Hinds County Detention Center (HCDC). Booth warned Clincy to be careful with Skinner (whom Booth described as "combative"), informed Clincy that Skinner had pointed a shotgun at police at his home, removed Skinner's handcuffs, and left him in Clincy's custody. During

---

[1] On September 29, 2011, the Court ruled on a similar motion in this case filed by Defendant Sheriff Malcolm McMillin in his individual capacity. Order [93].

Skinner's intake, he allegedly yelled racial slurs at Clincy, a struggle ensued, Reed sprayed Skinner with mace, and Clincy and Reed—each of whom outweighed Skinner by roughly 70 pounds—physically restrained him. Clincy and Reed then placed Skinner in a general-population cell where he quickly hurled racial slurs at the other detainees and was beaten. Skinner alleges that Clincy and Reed allowed and watched the beating before moving him to isolation. At some point thereafter, Clincy and Reed gave Skinner a shower, allowing him to wash out his eyes, before their shift ended that evening.

Plaintiff sued Clincy and Reed in their official and individual capacities for excessive use of force, failure to protect, civil conspiracy, and failure to prevent conspiracy, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and for state-law tort claims of assault, battery, civil conspiracy, breach of fiduciary duty, outrage, intentional infliction of emotional distress, slander, and slander *per se*. In the instant motion, Clincy and Reed seek summary judgment as to all claims asserted against them in their individual but not official capacities. With respect to Skinner's federal claims, Clincy and Reed invoke the analytical framework applicable to qualified immunity.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation and quotations omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

Finally, the Court must reluctantly observe that Skinner's Response rarely complies with, or fulfils his burdens under, Rule 56. To begin with, the entire response is replete with conclusory arguments and bald factual assertions. Many of the allegations seem to directly contradict the record evidence without proper citation to countervailing evidence. The examples are too frequent to list, but in almost all instances Skinner either cited no record evidence whatsoever or generically cited entire records or depositions.

Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W.*

*Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (citations and quotations omitted). This well-established understanding is now embedded in Rule 56(c)(1), which states that a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added). Moreover, Rule 56(c)(3) now reads: "Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record."

Here, almost none of Skinner's material-factual assertions comply with Rule 56(c)(1), and arguments from counsel are not competent summary-judgment evidence. It would therefore be tempting to simply say that Skinner has failed to support his response. But in the interest of justice, and as allowed by Rule 56(c), the Court has endeavored to consider the record as a whole. To the extent it may have missed something, the fault rests with Skinner.

III. Analysis

A. Federal Claims

Skinner asserts federal claims against Clincy and Reed in their individual capacities premised on 42 U.S.C. §§ 1983, 1985, and 1986. As to each, Clincy and Reed claim that they are entitled to qualified immunity.

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

4

"[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is "an entitlement not to stand trial or face the other burdens of litigation." *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). In the summary judgment posture the court "'looks to the evidence before it (in the light most favorable to the plaintiff).'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Thus, "[a]n official is

5

eligible for qualified immunity even if the official violated another's constitutional rights." *Id.* (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555, U.S. 223, 236 (2009)). In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237.

1. Excessive Force Claim

Skinner alleges that Clincy and Reed used unreasonable force to subdue him. "The core inquiry in an . . . excessive use of force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *McClyde v. Jackson*, 405 F. App'x 891, 893 (5th Cir. 2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Assessing this claim requires a closer look at the facts.[2]

According to Skinner, "[t]he only provocation from the excessive force used were the allegations that Skinner was using racial slurs . . . ." Pl.'s Resp. [81] at 3. Skinner supports this allegation by generally citing his Amended Complaint [72] (which is not competent evidence) and the incident reports, which contradict his argument. For example, Reed's report states that he heard Skinner and Clincy "arguing" and that the two were in a "confrontation" when Reed arrived. Defs.' Mot. [36] Ex. C, Inmate Records at 23. Reed later testified that Clincy and

---

[2]Skinner's Response argues that excessive force was used during the arrest. Pl.'s Resp. [81] at 9. But neither Reed nor Clincy participated in those events and neither face liability for the acts of other officers. *Monell v. Dep't of Soc. Servs. of N.Y*, 436 U.S. 658, 691 (1978).

6

Skinner were in a physical altercation, that "Skinner was swinging on Deputy Clincy" and that Clincy "was trying to hold him and grab him" when Reed intervened. Pl.'s Resp. [80] Ex. H, Reed Dep. at 66. Clincy's report says essentially the same thing, recording that Skinner "took a swing at me," and that while Clincy "was struggling with this subject Deputy Reed arrived." Defs.' Mot. [36] Ex. C, Inmate Records at 24. For his part, Skinner—who was admittedly intoxicated—cannot competently rebut the Deputies' accounts because he does not "know what, if anything, [he] did immediately prior to being pepper sprayed." Pl.'s Resp. [80] Ex. J, Skinner Dep. at 39.

Turning to the qualified immunity standard, Skinner lumps the acts of Clincy and Reed together, but the claims must be viewed separately, starting with Clincy. The facts known to Clincy included the following: Skinner was arrested for assaulting his girlfriend, Clincy had been told Skinner pointed a shotgun at an officer and was still combative, Skinner was intoxicated, Clincy heard Skinner call him a racial slur before swinging at him, and Clincy struggled to subdue Skinner by grabbing him. There is nothing to suggest that Clincy asked Reed to use mace. The Court concludes as a matter of law that Clincy did not use unconstitutional force and alternatively that he acted with objective reasonableness.

The same is true for Reed, although the analysis is slightly different because he used the mace. Reed heard Skinner's argument with Clincy, and he arrived to find the two in a physical altercation. Reed saw Skinner swing at Clincy and saw Clincy trying to grab Skinner from the side. Pl.'s Resp. [80] Ex. H, Reed Dep. at 66. Though Clincy may have succeed in grabbing and even controlling Skinner, Skinner was not in handcuffs at this point and there is no suggestion that Skinner had stopped resisting. Reed then sprayed mace and now states that he missed his

7

target. *Id*. at 67. Based on the totality of the circumstances, Skinner has not established that Reed used unconstitutionally excessive force or that his actions were objectively unreasonable. *Compare Stone v. Damons*, 252 F. App'x 581, 582 (5th Cir. 2007) (per curiam) (affirming summary judgment in excessive-force case where officer used pepper spray on suspect who was resisting arrest), *with Bailey v. Turner*, 149 F. App'x 276, 278 (5th Cir. 2005) (per curiam) (reversing dismissal where fact question existed as to whether defendant officers sprayed plaintiff directly in face for 10 to 25 seconds after he was restrained in handcuffs and no longer resisting arrest).

2. Failure-to-Protect Claim[3]

Skinner avers that Clincy and Reed placed him in a cell and allowed other detainees to beat him. Defendants had a duty to protect Skinner due to his status as a pre-trial detainee. *See Brown v. Harris Cnty.*, 409 F. App'x 728, 730 (5th Cir. 2010) (per curiam). And "the Eighth Amendment guarantee of protection from inmate violence was clearly established" at the time Skinner was allegedly beaten in the HCDC. *Morgan v. Hubert*, 459 F. App'x 321, 325 (5th Cir. 2012). To survive Clincy and Reed's qualified immunity defense on the failure-to-protect claim, Skinner "must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998) (quoting *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)).

---

[3]Skinner argues that Clincy and Reed are responsible for failing to establish adequate protective procedures. Pl.'s Mem. [81] at 12. Yet he offers no record evidence that either Defendant was somehow responsible for the policies and procedures at the HCDC.

Whether the risk involved was substantial "is ultimately a question of context and is susceptible to evaluations of 'contemporary standards of decency.'" *Morgan*, 459 F. App'x at 326 (quoting *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995)). As for deliberate indifference, the standard requires subjective culpability and "cannot be inferred from a jail official's failure to act reasonably." *Moneer v. Harrison Cnty. Det. Ctr.*, No. 1:07cv1060-LG-JMR, 2008 WL 4450255, at *5 (S.D. Miss. Sept. 29, 2008); *see Farmer v. Brennan*, 511 U.S. 825, 843 n.8 (1994) (noting the importance of the subjective culpability requirement). To act with deliberate indifference, "the [defendants] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Neals*, 59 F.3d at 533 (citation and quotations omitted). In other words, Skinner must show that Clincy and Reed disregarded a risk of harm that was actually known to them when they placed Skinner in the holding cell with other detainees. Deliberate indifference is an "extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation and quotations omitted).

Turning to the facts, Skinner cannot recall what happened, so the Court looks to the facts as conveyed by Clincy and Reed. The Court must view those facts in the light most favorable to Skinner, the non-moving party. *Hampton*, 480 F.3d at 364. According to Clincy's incident report:

> *As we were placing* the suspect into holding cell #1121 suspect Skinner again referred to this office [sic] as a punk black nigger. I closed the door and, could hear this subject calling other subjects in the cell "nigger" also. The other inmates were beating this subject and we had to remove him from this cell block before he was hurt any worse. Subject was then placed by him[self] in cell 1114.

9

Defs.' Mot. [36] Ex. C, Inmate Records at 24 (emphasis added). Reed provided a similar account: "*While opening* to [sic] door Skinner called deputy Clincy a 'Punk Black Nigger' again. Deputy Clincy closed the door and we heard him calling other inmates in the cell nigger. As Clincy opened the door there was another inmate beating Skinner." *Id.* at 23 (emphasis added).

Viewed most favorably to Skinner, it appears that after the cell door was open—*i.e.*, when the other detainees could hear him—Skinner called Clincy a "Punk Black Nigger," *id.*, a highly offensive term that other inmates could easily view as fighting words. This was at least the second time Skinner used racial slurs over a short interval. And there is no dispute that Defendants considered Skinner to be combative when he was placed in the cell. *See* Pl.'s Resp. [80] Ex. F, Clincy Dep. at 65 (explaining that Skinner was not given a shower after the mace incident because he was still combative). According to them, Skinner was arrested for assaulting his girlfriend and pointing a shotgun at an officer, took a swing at the much larger Officer Reed, and engaged in what Reed described as a physical altercation just before Defendants deposited Skinner in the cell. Defs.' Mem. [37] at 2; Pl.'s Resp. [80] Ex. H, Reed Dep. at 66. There is likewise no dispute that Skinner remained intoxicated and therefore more vulnerable. Yet while he was in this known belligerent state, Defendants placed Skinner in a general-population cell holding a fairly large number of detainees charged with various violent offenses. Pl.'s Resp. [80] Ex. F, Clincy Dep. at 77–78. Clincy seemed to agree that these detainees lacked maturity to ignore racist comments. *Id.* at 78. Despite all this, Defendants shut the door, locking Skinner in the cell without supervision.

At that point, the various accounts from Clincy and Reed differ somewhat. Clincy indicates in his affidavit that he and Reed did not stay to monitor the situation and instead walked

10

off before hearing Skinner—through the cell door—calling other detainees "nigger." Defs.' Mot. [36] Ex. E, Clincy Aff. ¶ 7. Under this version, the two immediately returned to find Skinner being beaten. That said, the two incident reports could be read to suggest that the two never left the door, remaining outside long enough to hear additional racial slurs and a subsequent beating before they moved in to prevent Skinner from being "hurt any worse." Defs.' Mot. [36] Ex. C, Inmate Records at 24.[4]

The Court understands that Clincy and Reed claim that they acted immediately to protect Skinner. That may prove true, but this record, viewed in a light most favorable to the non-movant, raises a question of fact on that point. The Court further finds a question of fact whether Clincy and Reed recognized a substantial risk to leaving Skinner in a general-population cell without supervision long enough to suffer harm. It should be noted that deliberate indifference does not require direct evidence of an official's knowledge and may be established through circumstantial evidence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Here, there is circumstantial evidence that the officers would be at least annoyed with Skinner and that they knew his condition. And if they intentionally left this pre-trial detainee in a cell long enough to suffer abuse, then their acts would not be objectively reasonable. Thus, viewing the facts in the light required by Rule 56, the Court concludes that Defendants are not entitled to summary judgment on Plaintiff's failure-to-protect claim based on qualified immunity.

---

[4]Skinner offers a different timeline suggesting that Clincy and Reed heard the final slurs and saw the altercation before shutting the door. Pl.'s Resp. [81] at 9. This argument fails for lack of supporting record evidence.

3. Conspiracy Claims

Clincy and Reed also argue that Skinner's § 1985 and § 1986 civil conspiracy allegations fall short.

> To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994) (citations omitted).

Skinner claims that Clincy and Reed conspired with the Jackson Police Department and Officer Booth "to 'teach the Plaintiff a lesson' for allegedly pointing a shotgun at police and using racial slurs," and that Clincy and Reed carried out this conspiracy by placing him in a cell with black inmates, knowing that he would continue to yell racial slurs, causing his fellow cellmates to beat him. Pl.'s Mem. [81] at 14. Assuming Plaintiff could offer evidence supporting the existence of a conspiracy between Clincy, Reed, JPD, and Booth, Skinner still fails to present evidence showing the conspiracy was aimed at him based on "a class-based animus."[5] Plaintiff's § 1985 claim cannot stand without that evidence. And, because a § 1986 neglect-to-prevent-a-conspiracy claim presupposes a § 1985 conspiracy, dismissal of the § 1986 claim is likewise required. *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).[6]

---

[5] Plaintiff appears to ask the Court to assume the requisite class-based animus based solely on Plaintiff's use of racial slurs. But nothing in the record supports Plaintiff's allegation that Clincy and Reed conspired with Booth about anything, much less that such a conspiracy was based on class-based animus arising out of Skinner's use of racial slurs.

[6] Alternatively, Clincy and Reed submit that Skinner's § 1986 claim, brought more than one year after the alleged conspiracy, is untimely. Skinner ignored this argument, and the Court

4. Failure to Provide Medical Care

Skinner's Response [81] includes a number of assertions regarding denied or delayed healthcare by other employees at the facility. But there is no *respondeat superior* liability under § 1983. As to Clincy and Reed, Skinner argues more specifically that they failed to wash out his eyes after he was sprayed. On this point, Skinner has not offered evidence demonstrating the extent to which he needed immediate care—Reed claims that he missed when he fired the mace. Skinner likewise fails to sufficiently address either deliberate indifference or "substantial harm" caused by the alleged delay in washing out his eyes. *See Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (holding that a delay in medical care must cause "substantial harm" to be a constitutional violation). Defendants are entitled to qualified immunity.

B. State Claims

Finally, Clincy and Reed move to dismiss Skinner's state-law claims against them in their individual capacities based on various provisions of the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-1 *et seq.* Skinner does not address this portion of the motion in his response and appears to have abandoned the claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment." (citation omitted)). Regardless, Clincy and Reed's arguments appear meritorious. The Court concludes that Skinner's state-law claims against Clincy and Reed in their individual capacities should be dismissed.

---

finds it meritorious. *See* 42 U.S.C. § 1986.

IV.     Conclusion

The Court has fully considered all of the arguments presented in the parties' briefs but has not expressly addressed every contention.  Those not addressed were either unsupported in law or fact or would not change the result of this Order.  Based on the foregoing, the Court finds that Clincy and Reed's motion for summary judgment should be granted in part and denied in part.  Clincy and Reed are denied qualified immunity for the failure-to-protect claim.  Skinner's other claims against Clincy and Reed in their individual capacities are dismissed.  The parties are instructed to contact the magistrate judge to set the case for status conference.  Judge Ball may lift the stay if appropriate.

**SO ORDERED AND ADJUDGED** this the 7th day of September, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE