IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

WILLIAM B. SKINNER                                                    PLAINTIFF

v.                                                    Cause No. 3:10cv358 DPJ FKB

HINDS COUNTY, MISSISSIPPI, CITY OF                          DEFENDANTS
JACKSON, MISSISSIPPI, OFFICER KEITH BOOTH,
in his official and individual capacity, ET AL.

**CITY OF JACKSON DEFENDANTS' MEMORANDUM OF AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the City of Jackson, Mississippi ("City"), and Officer Keith Booth, in his

official capacity ("Booth"), collectively referred to as the "City of Jackson Defendants," through

counsel, pursuant to the Federal Rules of Civil Procedure and other applicable authority, and files

their Memorandum of Authorities in support of their Motion for Summary Judgment.  The City of

Jackson Defendants respectfully  request that this Court grant them judgment as a matter of law in

their favor and against the Plaintiff, William B. Skinner ("Skinner" or "Plaintiff").   In support

thereof, the City of Jackson Defendants state as follows:

**Introduction and Procedural Summary**

Plaintiff instituted this action by the filing of his original Complaint on June 28, 2010 [Dock.

No. 1], against the City of Jackson, Mississippi ("City"), Booth, in his official capacity as a Jackson

Police officer and in his individual capacity, as well as other Defendants, including, but not limited

to, Hinds County, Mississippi.  Plaintiff's Amended Complaint of May 17, 2011 [Dock. No. 72],

includes federal claims under 42 U.S.C. §§ 1983, 1985 and 1986, and state-law claims for battery,

assault, civil conspiracy, breach of fiduciary duty, the tort of outrage, intentional infliction of

emotional distress, slander and slander *per se*. The majority of Plaintiff's claims are directed against

the Hinds County Defendants.[1]  The City of Jackson Defendants filed their Answer and Affirmative Defenses to the Amended Complaint on May 23, 2011 [Dock. No. 74], in which the City of Jackson Defendants specifically raised all substantive and procedural defenses available under 42 U.S.C.A. § 1983, those defenses available to them under the MTCA, the applicable statute(s) of limitations, and other affirmative defenses and immunities available to them.[2]

In this instance, Plaintiff cannot recover against the City of Jackson Defendants. Summary judgment is  proper in this instance because Plaintiff has not established the necessary predicate for attachment of municipal liability.  A municipality may only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes a constitutional violation. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(*Monell*). Plaintiff cannot prevail in this § 1983 municipal liability claim, as he cannot show the following three required elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting Monell, 436 U.S. at 694)[3]; *see also Doe v. Covington County School District*, 675

---

[1]*See also* Order, October 17, 2013 [Dock. No. 150].

[2]Pursuant to this Court's Order of October 17, 2013 [Dock. No. 150], the instant proceedings were stayed by order dated November 16, 2010. The "Court erroneously lifted the stay on December 12, 2011..." [p.4, Dock. No. 150]. Thereafter, on February 14, 2012, this Court stayed the case again, and no discovery was exchanged between December 12, 2011, and February 14, 2012.  In fact, the only written discovery that was propounded by the Plaintiff to the City of Jackson Defendants was on March 4, 2011. The Plaintiff did not depose any City of Jackson official or policy maker at any time. Plaintiff did conduct the deposition of Booth on April 5, 2011. *See also* Exhibit "17 " to Motion.  No CMC took place between December 12, 2011, and February 14, 2012.  The stay was ultimately lifted on June 11, 2013.

[3]Because it requires an official policy promulgated by an authorized policymaker, "[m]unicipal liability cannot be sustained under a theory of respondeat superior." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); see also *Flores v. Cameron Cnty.*, 92 F.3d 258, 263 (5th Cir. [350] 1996) ("[A] local government may not be held liable under § 1983 for the unconstitutional acts of its non-policymaking employees . . . ."). To determine

F.3d 849,866-67 (CA 5th (S.D. Miss.) 2012)[4]. Plaintiff has failed to establish the necessary elements to prevail in the instant § 1983 municipal liability claim, thus entitling the City of Jackson Defendants to an award of judgment as a matter of law. Finally, the Plaintiff cannot recover against the City of Jackson Defendants for his state-law claims, as the City of Jackson Defendants are immune to all of Plaintiff's claims according to the Mississippi Tort Claims Act (MTCA).

## Standard of Review

Summary judgment is warranted pursuant to Rule 56(e) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56 "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,322 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.  Following this, the Plaintiff, as the nonmoving party, must "go beyond

---

whether a municipal official is a policymaker, we look to state law to assess whether the official had "final policymaking authority" over the activity at issue. *McMillian v. Monroe Cnty*., 520 U.S. 781, 786 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Furthermore, "policymaking authority 'may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.'" *Flores*, 92 F.3d at 269 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (plurality opinion)).

[4]"A claim of municipal liability under Section 1983 'requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.' *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694)...[T]ime and again [it has been stated] that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.' *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997); see also *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.")."

the pleadings" and "designate specific facts showing a genuine issue for trial." *TIG Insurance Co. v. Sedgwick James of Wash.*, 276 F.3d 754,779 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).  In this instance, an award of summary judgment in favor of the City of Jackson Defendants and against the Plaintiff is appropriate because Plaintiff does not have the necessary three elements for municipal liability to attach as required by controlling federal statutory and case authority.  Plaintiff's other state-claims against the City of Jackson Defendants also fail because the City of Jackson Defendants are completely immune under the MTCA.

## **Undisputed/Admitted Facts**

As noted above, the City of Jackson Defendants, as the moving party, have the initial responsibility of informing the district court of the basis for their motion, and to identify those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. Accordingly, the City of Jackson Defendants identify the following portions of the record, documents and other exhibits on which they rely that demonstrate the absence of any genuine issue of material fact.  The following itemization of undisputed and/or admitted facts are set forth below with the cross-referenced portions of the record, documents and other exhibits supporting each such fact.

1. **The City of Jackson, Mississippi, is a municipal corporation and local governmental entity** [¶6,p.3, Amended Complaint, Dock. No. 72];

2. **Keith Booth, at the time and date alleged in the Amended Complaint, was employed by the City of Jackson, Mississippi, with the Jackson Police Department, as an officer** [¶8 ,p.4, Amended Complaint, Dock. No. 72];

3. **Plaintiff's allegations against the City of Jackson Defendants and Booth arise from an incident that occurred on July 1, 2007.**  [¶8, Dock. No. 72; JPD Incident

Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No.  -002007127942,dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion; JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), Exhibit "9" to Motion; JPD Individual Arrest Listing for Skinner, William B., copies issued 03-04-08 (COJ discry resp 00011-00012), Exhibit "10" to Motion; Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion; William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, Exhibit "19" to Motion.

4.   **Plaintiff and his girlfriend, Darlene Summerall, resided at 2646 Maria Terrace Drive, Jackson, Mississippi, on July 1, 2007** [ JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No.-002007127942,dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), p. 8, 37, 52-55 Skinner Depo of 10/15/13, Exhibit "19" to Motion];

5.  **On July 1, 2007, a call for service to JPD was made from Plaintiff's Maria Terrace Drive address by Plaintiff's girlfriend, Darlene Summerall, regarding a domestic dispute.** [ JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No. 002007127942 dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), pp. 52-55 Skinner Depo 10/15/13, Exhibit 19 to Motion];

6.  **Booth was one of the JPD officers dispatched to the call for service at Plaintiff's Maria Terrace address**. [JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No.  -002007127942,dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), Exhibit "9"to Motion; JPD Individual Arrest Listing for Skinner, William B., copies issued 03-04-08 (COJ discry resp 00011-00012), Exhibit "10" to Motion, and  Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion];

7.  **Plaintiff's girlfriend, Darlene Summerall, who made the call for service to JPD, advised Booth and other officers upon their arrival on scene that there had been an altercation between Ms. Summerall and Skinner, and that Skinner was inside the house with multiple firearms.** [JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch

Report, Event No. 002007127942 dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; pp.19-21;24-27;29-30;32-33;37-41;43, Booth Deposition, Exhibit "17" to Motion];

8.     **Skinner admits that, prior to the arrival of law enforcement, that he had been arguing with his girlfriend and was extremely intoxicated** [William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, p. 8, 37, 52-55, Exhibit "19" to Motion; *see also* Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion];

9.     **Skinner admits that, at the time that law enforcement entered the premises, he was intoxicated and was armed with a shotgun** [William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, p. 8, 37, 50-55, Exhibit "19" to Motion *see also* Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion];

10.    **Skinner was arrested by JPD for felon with a firearm, simple assault and/or domestic violence on July 1, 2007** [ JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No.      -002007127942,dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), Exhibit "9" to Motion; JPD Individual Arrest Listing for Skinner, William B., copies issued 03-04-08 (COJ discry resp 00011-00012), Exhibit "10" to Motion; Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to

Motion];

11.    **After Skinner's arrest, he was subsequently transported to the Hinds County Detention facility by Booth on July 1, 2007** [Dock. No. 50, JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No. -002007127942,dated 07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), Exhibit "9" to Motion; JPD Individual Arrest Listing for Skinner, William B., copies issued 03-04-08 (COJ discry resp 00011-00012), Exhibit "10" to Motion; Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion];

12.    **Upon Officer Booth's arrival at the Hinds County Detention facility, Booth transferred Skinner to the custody of Hinds County Deputy Sheriff Lurenza Clincy on July 1, 2007, at approximately 2050 hours; thereafter Officer Booth departed the facility** [¶¶3-4,p.2, Dock. No. 50 JPD Incident Report July 1, 2007, Exhibit "1" to Motion; JPD Use of Force Report, Exhibit "2" to Motion; JPD Arrest Report, Exhibit "3" to Motion; JPD A-CAD Incident History/Call Report, Event No. 00-002007127942 (COJ discry resp 00005), Exhibit "4" to Motion; JPD A-CAD Incident History/Call Report, Event No.00-002007127942, dated 07/01/2007 (COJ discry resp 00006), Exhibit "5" to Motion; JPD A-CAD Incident History/Dispatch Report, Event No.    -002007127942,dated  07/01/2007 (COJ discry resp 00007), Exhibit "6" to Motion; JPD A-CAD Incident Unit Assignment Report, Event No. 00-002007127942, dated 07/01/2007 (COJ discry resp 00008), Exhibit "7" to

Motion; JPD A-CAD Incident History Complainant Report, Event No.00-002007127942, dated 07/01/2007, K. Booth Complainant (COJ discry resp 00009), Exhibit "8" to Motion;JPD A-CAD Service Inquiry Incident Report, Event No.00-002007127942, dated 07/01/2007 for Maria Terrace Drive (COJ discry resp 00010), Exhibit "9" to Motion; JPD Individual Arrest Listing for Skinner, William B., copies issued 03-04-08 (COJ discry resp 00011-00012), Exhibit "10" to Motion; Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; Keith Booth Deposition (April 5, 2011), Exhibit "17" to Motion];

13. **Jackson Court Services notified the Hinds County Sheriff's Office on July 5, 2007, that (1) felony charge against Skinner of convicted felon with possession of firearm was not applicable; (2) Skinner's charge of resisting arrest disorderly conduct and simple assault was completed because of Skinner's time served and (3) that there was a bond trial ($15,000.00) for the domestic violence and simple assault charges scheduled for August 8, 2007**[Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, Exhibit "19" to Motion]

14. **The charge of convicted felon in possession of a firearm against Skinner was dismissed on August 23, 2007, and no action taken** [Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault,

Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, Exhibit "19" to Motion];

15.   **On August 23, 2007, Skinner was ROR on  the misdemeanor charges of simple assault and/or domestic violence** [Jackson Municipal Court-Court Services, Update on Status of Inmate held by HCSO, dated 07/05/07 (000000022), Exhibit "11" to Motion; Abstract of Court Record for William Skinner, Charge: Domestic Violence, Case No. 2007-127942, dated 02/25/08, Exhibit "12" to Motion; Abstract of Court Record for William Skinner, Charge:Simple Assault, Case No. 2007-127942, dated 02/25/08, Exhibit "13" to Motion; Abstract of Court Record for William Skinner, Charge:Convicted Felon w/Deadly Weapon, Case No. 2007-127942, dated 02/25/08, Exhibit "14" to Motion; City of Jackson Municipal Court Services Report of Charges, dated 08/23/2007 (000000005), Exhibit "15" to Motion; William Skinner Booking Release Page (executed), Booking No. 2007009151, dated 08/23/07 (000000003), Exhibit "16" to Motion; William Skinner Deposition of April 8, 2011, Exhibit "18" to Motion; William Skinner Deposition of October 15, 2013, Exhibit "19" to Motion];

16.   **The City of Jackson Defendants filed their Answer and Affirmative Defenses to the Amended Complaint on May 23, 2011, and asserted affirmative defenses including, but not limited to, Plaintiff's failure to comply with the requirements of Miss. Code Ann. § 11-46-11(3); all substantive and procedural defenses and immunities which exist in the City's favor pursuant to Miss. Code Ann. § 11-46-1 *et. seq.*; no reckless disregard; applicable statute(s) of limitation(s); no *respondeat superior* liability, no official capacity liability pursuant to 42 U.S.C.A. § 1983, and the absence of deliberate indifference and any custom, policy, pattern or practice that was a moving force behind any constitutional violations of Plaintiff's rights** [Dock. No. 74];

17.   **Booth filed his Answer and Affirmative Defenses to the Amended Complaint on May 23, 2011, and asserted affirmative defenses including, but not limited to, Plaintiff's failure to comply with the requirements of Miss. Code Ann. § 11-46-11(3); all substantive and procedural defenses and immunities which exist in the Booth's favor pursuant to Miss. Code Ann.  § 11-46-1 *et. seq.*; no reckless disregard; applicable statute(s) of limitation(s); no *respondeat superior* liability, no official capacity liability pursuant to 42 U.S.C.A. § 1983; qualified immunity; and the absence of deliberate indifference and any custom, policy, pattern or**

**practice that was a moving force behind any constitutional violations of Plaintiff's rights** [Dock. No. 75];

18.    **Plaintiff has not deposed any policy maker for the City of Jackson, nor conducted a 30(b)(6) deposition of any individuals from the City of Jackson. The only deposition conducted by the Plaintiff of any City of Jackson Defendant was Keith Booth, in his individual capacity** [*See* Court Docket; *see also* Exhibit "17" to Motion];

19.    **Plaintiff did not provide any Notice of Claim Letter to the Defendants as required by Miss. Code Ann. § 11-46-11(3)** [p. 4, ¶Fourteenth Affirmative Defense, Dock. No. 74; p.3, Fourteenth Affirmative Defense, Dock. No. 75; Dock. Nos. 137; 138;138-1;138-2 and Order dated 10/17/13, Dock. No. 150], and

20.    **Plaintiff's  state-law claims for battery, assault, civil conspiracy, breach of fiduciary duty, the tort of outrage, intentional infliction of emotional distress, slander and slander *per se*, as alleged by the Plaintiff, all occurred while he was a pretrial detainee in the Hinds County Detention facility** [Dock. Nos. 137; 138;138-1;138-2 and Order dated 10/17/13, Dock. No. 150].

## <u>Argument and Authorities</u>

At the onset, the City of Jackson Defendants refer this Court to the allegations contained in the Amended Complaint.  Specifically, the Plaintiff alleges certain claims against the Hinds County Defendants, **that do <u>not</u> include** the City of Jackson Defendants.  The claims that are not directed to the City of Jackson Defendants are  (1)  Count III Action for Neglect or Failure to Prevent Conspiracy (42 USC Section 1986) [¶¶37-39,pp. 15-16, Dock. No. 72], and (2) Count IV Failure to Adequately Train & Supervise Deputies and Negligent Hiring  [¶¶40- 43,pp. 15-16, Dock. No. 72]. Additionally, while Plaintiff appears to contend that Booth "acted pursuant to the policies, regulations and decisions  officially adopted or promulgated *by those persons*...," that represent the "official policy or were pursuant to a governmental custom , usage of the Defendants, Hinds County, Mississippi, the Hinds County Sheriff Department and/or Sheriff Malcolm McMillan, and the City of Jackson," [¶¶31,pp. 14-15, Dock. No. 72],   Plaintiff has not deposed any policy maker or

11

identified any policy, custom, practice or pattern of the City of Jackson. The Amended Complaint likewise does not articulate or identify any City of Jackson policy, custom, practice or pattern that resulted in Plaintiff's alleged constitutional violations. Similarly, the Amended Complaint does not allege, with any particularity whatsoever, that a City "policy maker" adopted any illegal policy, custom, practice or pattern that resulted in Plaintiff's alleged constitutional violations. [*See* Dock. No. 72].

Despite these failures by Plaintiff, and based on itemization of undisputed and/or admitted facts, the portions of the record, documents and other exhibits identified by the City of Jackson Defendants, summary judgment in the City of Jackson Defendants' favor is warranted. Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the evidence in this case reveals there is no genuine dispute regarding any material fact, and that Plaintiff is unable to sufficiently show the existence of the elements essential to his case for recovery against the City of Jackson Defendants. As a result, the City of Jackson Defendants are entitled to entry of an order granting them judgment as a matter of law in their favor and against the Plaintiff. The City of Jackson Defendants also request any and all other relief to which they may be entitled.

**I.     No recovery under federal law against the City of Jackson Defendants.**

Plaintiff's federal claims against the City of Jackson Defendants fail, *in toto*, under *Monell*.[5] The Plaintiff has not alleged and cannot establish an unconstitutional policy or custom that was the moving force behind Plaintiff's alleged constitutional violations. *See also* 42 U.S.C. §1983. The Plaintiff cannot prevail on his claims against the City of Jackson Defendants because he cannot show the necessary three elements to prevail on municipal liability under §1983, which are (1) a policy

---

[5]*Monell v. Department of Social Services*, 436 U.S. 658 (1978).

maker; (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the

policy or custom. *See also Pitrowski v. City of Houston*, 237 F.3d 567,578 (5th Cir. 2001).[6]

As noted above, Skinner pleads the instant action pursuant to 42 U.S.C.A. § 1983.  At the

onset, a local government may not be held liable under § 1983 for the unconstitutional acts of its

non-policymaking employees.  *Flores v. Cameron Cnty.*, 92 F.3d 258, 263 (5th Cir. 1996).

Moreover, municipal liability requires an official policy promulgated by an authorized policymaker.

*Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)("[m]unicipal liability cannot

be sustained under a theory of respondeat superior"); see also *Flores v. Cameron Cnty.*, 92 F.3d 258,

263 (5th Cir. 1996).  To determine whether a municipal official is a policymaker, District Courts

look to state law to assess whether the official had "final policymaking authority" over the activity

at issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 7

F.3d 1241, 1245 (5th Cir. 1993).  In fact, such "'policymaking authority 'may be granted directly by

a legislative enactment or may be delegated by an official who possesses such authority.'" *Flores*,

92 F.3d at 269 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L.

Ed. 2d 452 (1986) (plurality opinion)).  In the case at bar, however, there is no City of Jackson policy

maker named by the Plaintiff in his Amended Complaint [Dock. No.72], and Plaintiff does not

identify or articulate any policy specifically attributable to the City of Jackson that was adopted by

---

[6]According to applicable Fifth Circuit precedent, an "official policy" may arise either directly from an authorized policymaker's "statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom." *Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). As it relates  to a direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken. *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 699 (5th Cir. 1998) (quoting *Pembaur*, 475 U.S. at 483). As it relates to an official policy arising from custom, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom" and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581 (quotation marks and other internal citations omitted).

any City official with policy-making authority.

The "...elements necessary to prove an excessive force claim under Section 1983 are (1) a **significant injury** which (2) **resulted directly and only from the use of force** that was **clearly excessive to the need**, and the (3) **excessiveness of which was objectively unreasonable**." *Hudspeth v. City of Shreveport*, 2006 U.S. Dist. LEXIS 91053 (W.D. La. 2006)(emphasis supplied). The City of Jackson Defendants in no way dispute that the Plaintiff has the right to be free from excessive force, or that this is a clearly established right, being that an arrestee has a clearly established right to be from excessive force. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (CA 5th 2012). But, the force that arresting officers can use in an arrest depends on the circumstances.[7] Moreover, not every "push, or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment."

An examination of Skinner's deposition testimony is critical because it reveals the true facts on which Plaintiff attempts to recover from the City of Jackson Defendants under Federal law. The only evidence that Booth the City of Jackson Defendants somehow acted with deliberate indifference of the Plaintiff's constitutional rights is the self-serving testimony of the Plaintiff. Plaintiff's testimony is highly suspect, as Plaintiff testified, under oath, to the following:

•    [On July 1, 2007, Plaintiff] was sitting at my home with my girlfriend. **We got in an argument. We had been drinking.** I separated myself from her, and some time went by. It seemed to me like maybe of couple of hours. Maybe not that long, but that's what it seemed like. And then I was back in my **bedroom. I had been cleaning a shotgun.** I looked up, and I had all these people in my hall way pointing guns at me." [p. 9, Skinner Depo 04/08/11(emphasis supplied)]

•    "...I think **we had drank some beer. We might have had a shot of tequila. Mostly**

---

[7]*Poole v. City of Shreveport*, 691 F.3d at 627 (CA 5th 2012), relying on *Deville v. Mercantel*, 567 F.3d 156, 169 (5th Cir. 2009). See also *Graham v. O'Connor*, 409 U.S. 386, 396 (1989).

beer..." [p. 10, Skinner Depo 04/08/11 (emphasis supplied)]

- Q:  By the time that the individuals showed up in your room, **would you say you were intoxicated?**
  A:  **I would say so.**
  [p. 9, Skinner Depo 04/08/11 (emphasis supplied)]

- **When I relinquished the gun** and explained to them that it was not like it looked like, when they got me, **I forcibly taken down to the ground where I was handcuffed** and more or less hogtied, dragged outside. I was dropped on the concrete, and I had been pepper sprayed." [p. 12, Skinner Depo 04/08/11 (emphasis supplied)];

- Q:      When the handcuffs were taken off of you, **do you remember being combative?**
  A:      No, sir, **I don't recall that.**
  Q:      Once the **handcuffs were taken off of you, do you remember taking a swing at one of the detention deputies**?
  A:      No, Sir.  **I don't remember that at all.**
  Q:      **Are you saying it didn't happen, or are you saying you just don't recall one way or the other**?
  A:      I don't remember.  **I don't remember doing it.**
  [pp. 17-18, Skinner Depo 04/08/11 (emphasis supplied)]

- Q:      Do you know who pepper sprayed you?
  A:      No, Sir, I don't know for sure.
  [p. 19, Skinner Depo 04/08/11]

- Q:      Do you know, what, if anything, you did immediately prior to being pepper sprayed?
  A:      No, I don't.
  [p. 39, Skinner Depo 04/08/11]

- Q:      ...**Do you know what you were charged with when you were booked into the Hinds County Detention Facility on July 1, 2007?**
  A:      I believe they got me charged with - - **as a convicted felon with a firearm, as assault and domestic violence, and I believe they charged me with having some old fines.**
  Q:      I think on or around July 5, 2007, you pled not guilty to those charges, is that right?
  A:      **At that time, two of those charges were dropped.**
  Q:      Okay. **What were those charges**?
  A:      The **charges that were dropped would have been the old fines and the**

15

**convicted felon with a firearm**.

Q:    And the only charges that you had **remaining were domestic violence, simple assault;** is that right?

A:    **That's how I understood it.**

[pp. 68-69 , Skinner Depo 04/08/11(emphasis supplied)]

- "...understand that [resisting arrest, disorderly conduct and simple assault charges] were dropped...that's correct."[p. 71, Skinner Depo 04/08/11];

- That's correct [that charges for domestic violence and simple assault charges were dropped]" [p. 74, Skinner Depo 04/08/11];

- "No Sir [I have not paid a fine relating to or as a result of the domestic violence simple assault charges from July 1, 2007]"[p. 78, Skinner Depo 04/08/11];

- "[Jackson Police Department was called on July 1, 2007, at Plaintiff's Maria Terrace address] **I didn't call them, but they were called**" [pp. 90-91, Skinner Depo 04/08/11 (emphasis supplied)]

- "**Me and my girlfriend had kind of gotten away from each other and separated because we' got in an argument.** I was back there by myself. I'd been sitting back there for awhile. **I got a gun out. I had taken it apart, cleaned it, put is back together again. I was sitting on my bed.** I looked up. There's folks pointing guns at me in my house. Did not know where they came from. Did not know they were called. I told them that - - **they told me to drop the gun.** I never pointed the gun at anybody. **It was up in the air.** I told them it's not what it looks like. I'm not going to shoot anybody. I did not shoot. I put the gun down. They came and got me. They put me down on the floor aggressively. They pepper sprayed me. They hit me. They handcuffed me and carried me outside. **And I believe - - I's kind of fuzzy on that**. I believe they dropped me outside. **And the next thing I know, I was at Hinds County** [On July 1, 2007, Plaintiff explains incident where he is sitting in his room and the police came in]  [pp. 92-93, Skinner Depo 04/08/11(emphasis supplied)]

- "I **was dropped on the ground. I think [JPD officers] just lost their grip...[I don't know] who the officer was who had [Plaintiff] whenever he lost his grip and dropped [Plaintiff] to ground...I believe [JPD] took that gun**" [p. 97 Skinner Depo 04/08/11(emphasis supplied)]

- "I had been pepper sprayed; **I had been drinking**; and I had been beat on.  I was dazed. **I really don't know what was going on at that point**" [p. 103 Skinner Depo 04/08/11 (emphasis supplied)].

Conspicuously, nowhere in the Amended Complaint does Plaintiff allege that the City of Jackson adopted policies, procedures and practices that allow the use of excessive force (or any policy whatsoever) that amounted to deliberate indifference resulting in a violation Skinner's constitutional rights of and resulted in Skinner's injuries. [Docket. No. 72 ].   Plaintiff further fails to allege that the Jackson Police Chief or other City official had knowledge of any alleged policy controlling Jackson police officers that was so inadequate that it was likely to result in the violation of an individual's constitutional rights. [Dock. No. 72]. There is nothing in the Amended Complaint that even conclusory alleges some failure by the City that evidences a policy of "deliberate indifference" to the rights of its inhabitants. [Docket No. 72].[8]   Here, William Skinner cannot not make any showing for recovery from the City of Jackson Defendants as required by 42 U.S.C. § 1983 and controlling Fifth Circuit precedent.

## II.     No municipal liability under *Monell*.

To establish municipal liability under 42 U.S.C. §1983 a plaintiff must show that (1) an official policy or custom (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  It is well-established that a municipality is not liable under § 1983  on the theory of respondeat superior. *Monell*, 436 U.S. at 694. Cities face § 1983  liability only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose

---

[8]Again, Plaintiff has not asserted, identified or deposed the Chief of Police or any other City official, identified any policy or custom by the City,  that any City official  had actual or constructive knowledge of any unconstitutional policy or custom, or that any City official promulgated any policy permitting excessive use of force or other constitutional violation.

edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*  As discussed *infra,* Plaintiff cannot set forth any sufficient evidence that demonstrates municipal liability under *Monell*.  There is no evidence of a policy of excessive use of excessive force or failure to train within the Jackson Police Department, no evidence that a policymaker adopted and promulgated an unconstitutional policy and certainly no evidence that this policy was a moving force behind Plaintiff's alleged constitutional violation.  Plaintiff simply cannot place any credible evidence before this Court that creates a genuine issue of material fact that this matter should proceed to trial.

A.      **No official custom, policy or practice by City established by Plaintiff that resulted in a deprivation of a constitutional right.**

It appears that the Amended Complaint obliquely alleges that the City of Jackson has adopted policies of using excessive force, which amounted to deliberate indifference to the rights of Skinner. An official policy or custom can be established in several ways.   An official policy may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policymaker. *Hobart v. City of Stafford*, 2012 U.S. Dist. LEXIS 53761,*22-23 (S.D. Tex. 2012), relying on *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161,168-69 (C.A. 5th 2010).  Specifically, proof of the existence of an "official policy made be made two ways: (1) by pointing to a policy statement formally announced by an official policy maker" or (2) demonstration of "a persistent widespread practice of city officials or employees, although not officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Hobart v. City of Stafford*, 2012 U.S. Dist. LEXIS 53761,*22-23 (S.D. Tex. 2012), relying on *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161,168-69 (C.A. 5th 2010).

Further, the policy form for an "unoffical widespread practice or pattern," (which Plaintiff *fails to allege or identify*), is made by showing either (1) a pattern of unconstitutional conduct by municipal actors/employees who are not final policy makers, or (2) showing that a final policy maker took a single unconstitutional action. *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d at 169 (C.A. 5th 2010). Furthermore, a "failure to train" may constitute a policy "...when it 'reflects a deliberate or conscious choice by a municipality." *Hobart v. City of Stafford*, 2012 U.S. Dist. LEXIS 53761*23 (S.D. Tex. 2012), relying on *City of Canton v. Harris*, 489 U.S. 378,389 (1989)(recognizing need to take some action to control local governmental agents is so obvious, and the inadequacy of existing training so likely to result in the violation of constitutional rights, that a municipality's failure to train its employees demonstrates a "deliberate indifference" to the rights of its inhabitants). However, regardless of the form, Plaintiff's claims against the City of Jackson Defendants regarding a policy or pattern of excessive force or a failure to train have no merit.

Indeed, any claim by Skinner of excessive force custom/policy or a failure to train by the City patently fail. Skinner does not provide any facts to show the existence of any custom or policy of the City which resulted in him being deprived of his rights under the Constitution. There are no specific facts with evidentiary support showing that possessed actual or constructive knowledge of any policy which allegedly caused the violations claimed by Skinner. Likewise, the Plaintiff does not provide any proof of (1) the existence of a custom or policy, (2) that any policy maker knew of the custom or policy, and (3) that such custom or policy was the moving force behind the violations. *See also Nitsch v. City of El Paso*, 482 F. Supp. 2d 820, 834-36 (W.D. Tex. 2007)(granting summary judgment to City of El Paso on plaintiff's excessive force and failure to train/inadequate training claims).

In order to state a claim for relief under the standard for municipal liability, under *Monell*, "...it is necessary to allege more than a single incident of illegality ...[a plaintiff] must demonstrate a pattern of abuses that transcends the error made in a single case." *Oporto v. City of El Paso*, 2010 U.S. Dist. LEXIS 91241 *12-13 (W.D.Tex. 2010), relying on *Piotrowski*, 237 F.3d at 582 (other citations omitted).   As a result, a "pattern" requires "sufficiently numerous prior incidents," as opposed to "isolated instances."  *Oporto v. City of El Paso*, 2010 U.S. Dist. LEXIS 91241 *12-13 (W.D.Tex. 2010), relying on *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). Furthermore, such a  pattern also requires similarity and specificity, as "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Oporto v. City of El Paso*, 2010 U.S. Dist. LEXIS 91241 *12-13 (W.D.Tex. 2010), relying on *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

More importantly, Plaintiff cannot put forth any admissible sufficient evidence to create a genuine issue of material fact that the City of Jackson has a pattern or practice of inappropriately using excessive force.   Plaintiff has also failed to plead and  provide evidence of similarity between any other instances of use of excessive force and the one purportedly at issue here, or how the City acted with deliberate indifference of Skinner's constitutional rights.  The Plaintiff <u>failed</u> to depose any policymaker of the City of Jackson, and only makes a single oblique reference to any policy or policy maker in the Amended Complaint.

This absence of proof is combined with the deposition testimony that has been taken shows the opposite.  Plaintiff took only a single deposition of the City of Jackson Defendants, being that of former Jackson Police Officer Keith Booth.  *See* Exhibit "17" to Motion.  Plaintiff does not contend that Booth has any policy making authority on behalf of the City of Jackson.  Booth testified

at his deposition that, at approximately 9:32a.m. on July 1, 2007, a call for service was received by JPD for domestic violence.  *See* pp. 11;13;15-21;26;28-29;32;36-37, Exhibit "17" to Motion; *see also* Exhibits "1" through "8" to Motion.  At that time, JPD was holding 10/40[9].  Booth specifically testified that he and other JPD officers "had a shotgun pointed at us," that Plaintiff's girlfriend, Darlene Summerall led them down a dark hallway, when Booth and another officer observed Skinner sitting on the bed.   *See* p. 37-41, Booth Deposition, Exhibit "17" to Motion.  When Skinner saw Booth and the other JPD Officer, Skinner "pulled out a shotgun...[a]fter he pulled out the shotgun, we got cover." *See* p. 40, Booth Deposition, Exhibit "17" to Motion.  Following this, Booth testified that he tried to talk Skinner down, and finally got Skinner to put down the shotgun, when additional back up officers arrived.  *See* p. 41, Booth Deposition, Exhibit "17" to Motion.  As Booth testified, when he and another officer were leading Skinner back through the hall, Skinner "got irate and started snatching...[Booth and another officer] attempted to subdue Skinner, and ***Officer Gagnard sprayed him***[10]..." *See* p. 41, Booth Deposition, Exhibit "17" to Motion (emphasis supplied); *see also* Use of Force Report, Exhibit "2" to Motion.  Booth specifically testified that he and Officer Gagnard did not place hand cuffs on Skinner until after Skinner became irate and combative. *Id*.

Skinner cannot present any evidence whatsoever supporting his claim that his injuries are any way connected to any of the  City of Jackson Defendants Plaintiff named in his Amended Complaint.

---

[9]10/40 is radio silence, used when there is an emergency and in situations where an officer needs assistance. *See* pp. 37-38, Booth Deposition, Exhibit "17" to Motion; *see also* Exhibits "4" through "8" to Motion.

[10]Plaintiff did not name Officer Gagnard in this litigation nor did Plaintiff  depose Officer Gagnard, despite the fact that Officer Gagnard was clearly the police officer that used OC spray on Skinner on July 1, 2007. *See also* Use of Force Report, Exhibit "2" to Motion, prepared by JPD Officer Gagnard, wherein Officer Gagnard reports that Plaintiff's girlfriend, Darlene Summerall, advised Officer Gagnard and Officer Booth that Skinner had multiple guns with him.  In this same Report, Gagnard stated that he observed  "a white male wearing no shirt and red shorts sitting on the side of the bed with a camouflage shotgun."

In fact, the record reflects that Officer Gagnard, not Booth, used OC spray on Skinner. *See* Use of Force Report, Exhibit "2" to Motion; p. 41, Booth Deposition, Exhibit "17" to Motion. Further, Skinner admits that after JPD officers cuffed him, the cause of Skinner's fall to the ground, if believed, was simply the result of the JPD officers losing their grip.[11]   A § 1983 plaintiff is <u>required</u> to show both the alleged constitutional deprivation and a *causal link* between a defendant's unconstitutional acts resulting in the plaintiff's injuries.  *See Phillips ex. rel. Phillips v. Monroe County, Mississippi*, 311 F. 3d 369, 372 (C.A.5th (Miss.) 2002)(emphasis supplied).  Skinner cannot clear the required "direct and only" causal link hurdle.  This failure, pursuant to controlling Fifth Circuit authority, entitles the City of Jackson Defendants to dismissal of Skinner's federal claims, with prejudice.

### B.   Booth's arrest of Plaintiff was made with probable cause.

The fact is, an officer defendant employed by the City of Jackson has qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which he was aware, there was a fair probability that the plaintiff had committed or was committing an offense. Probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. The plaintiff must clear a significant hurdle to defeat the officer's qualified immunity. There must not even arguably be probable cause for the arrest for immunity to be lost. *Granger v. Slade*, 361 F. Supp.2d 588,595-96

---

[11]"I was dropped on the ground.  I think [JPD officers] just lost their grip...[I don't know] who the officer was who had [Plaintiff] whenever he lost his grip and dropped [Plaintiff] to ground...I believe [JPD] took that gun" [p. 97 Skinner Depo 04/08/11].

(S.D. Miss. 2005).  Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), to recover damages for allegedly unconstitutional conviction or imprisonment, or for "other harm" caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order or declared invalid by a state tribunal authorized to make such a determination. 512 U.S. at 486-487.

The Amended Complaint conspicuously avoids the fact of the existence of probable cause. As set forth herein, Officer Booth had probable cause to arrest the Plaintiff.  Officer Booth responded to a call for service regarding a "disturbance."  This call for service , at approximately 9:32a.m. on July 1, 2007, was made by Skinner's girlfriend, Darlene Summerall.  *See* pp. 11;13;15-21;26;28-29;32;36-37, Exhibit "17" to Motion; *see also* Exhibits "1" through "8" to Motion.    JPD was holding 10/40[12].  Booth and another JPD officers "had a shotgun pointed at us," by Skinner, and had been advised by  Plaintiff's girlfriend that Skinner was in possession of numerous weapons. Ms. Summerall lead Booth and another officer down a dark hallway, where Booth and another officer observed Skinner sitting on the bed.  *See* p. 37-41, Booth Deposition, Exhibit "17" to Motion.

When Skinner saw Booth and the other JPD Officer, Skinner "pulled out a shotgun...[a]fter he pulled out the shotgun, we got cover."  *See* p. 40, Booth Deposition, Exhibit "17" to Motion. Booth  tried to talk Skinner down, and finally got Skinner to put down the shotgun, when additional back up officers arrived.  *See* p. 41, Booth Deposition, Exhibit "17" to Motion.  As Booth testified, when he and another officer were leading Skinner back through the hall, Skinner "got irate and started snatching...[Booth and another officer] attempted to subdue Skinner, and Officer Gagnard

---

[12]10/40 is radio silence, used when there is an emergency and in situations where an officer needs assistance. *See* pp. 37-38, Booth Deposition, Exhibit "17" to Motion; *see also* Exhibits "1" through "8" to Motion.

sprayed him..." *See* p. 41, Booth Deposition, Exhibit "17" to Motion (emphasis supplied).  Booth specifically testified that he and Officer Gagnard did not place hand cuffs on Skinner until after Skinner became irate and combative. *Id.* , the record reflects that Officer Gagnard, not Booth, used OC spray on Skinner. *See* Use of Force Report, Exhibit "2" to Motion; p. 41, Booth Deposition, Exhibit "17" to Motion. Further, Skinner admits that after JPD officers cuffed him, the cause of Skinner's fall to the ground, if believed, was simply the result of the JPD officers losing their grip.[13]

 A § 1983 plaintiff is <u>required</u> to show both the alleged constitutional deprivation and a *causal link* between a defendant's unconstitutional acts resulting in the plaintiff's injuries.

Thus, as revealed by the credible evidence identified herein, there was probable cause to arrest Skinner on July 1, 2007.  Officer Booth was dispatched to the subject scene regarding a domestic dispute, and observed the home in a state of disarray;  was advised by the female occupant that she and the male occupant had been  arguing, and that the male occupant at the home currently possessed multiple weapons.  Based on the facts presented in the aforementioned reports [Exhibits "1" through "8"], Officer Booth was advised that Skinner was armed, intoxicated and had been arguing with his girlfriend. *See also* Booth Deposition, Exhibit "17" to Motion.  A City of Jackson law enforcement officer such as Booth is permitted to take such steps that are reasonably necessary to protect his personal safety and maintain the status quo. Therefore, based on controlling federal statutory and case authority, the City of Jackson Defendants are entitled to judgment as a matter of law on Plaintiff's federal claims.

---

[13]"I was dropped on the ground.  I think [JPD officers] just lost their grip...[I don't know] who the officer was who had [Plaintiff] whenever he lost his grip and dropped [Plaintiff] to ground...I believe [JPD] took that gun" [p. 97 Skinner Depo 04/08/11]

### III.   City of Jackson Defendants are immune from state law claims under MTCA.

At the onset, the MTCA provides the exclusive remedy for Plaintiff's state-law claims against the City of Jackson, Mississippi, not Booth individually.  *See Phillips v. Mississippi Dept. of Public Safety*, 978 So. 2d 656, 660 (Miss. 2008).  The MTCA,  provides that, as a matter of public policy, political subdivisions of the State, like the City, are immune[14] from suit due to any tortious act or omission by their employees while the employees are acting within the course and scope of employment (and without reckless disregard for persons not engaged in criminal conduct at the time of the injury).  *See* Miss. Code Ann. § 11-46-7(1).  Additionally, where any of the immunities enumerated in the MTCA apply, the City of Jackson Defendants are completely immune from any claims arising from the act or omission complained of. *Willing v. Estate of Benz*, 958 So. 2d 1240 (Miss. App. 2007).  The only exception to this immunity would be if the subject employee, in this case, Booth, acted with reckless disregard of the safety and well being of innocent persons, or persons not engaged in criminal conduct.  Since Plaintiff does not allege that Booth acted with reckless disregard Plaintiff cannot recover from Booth under any state law claims.

Under the MTCA, the City of Jackson Defendants are immune from all of Plaintiff's claims rising out of acts by the City's employees engaged in the performance of their duties relating to police protection unless the employee acted with reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury.  *See* Miss. Code Ann. § 11-49-1(c)(Rev. 2002).  If there is no reckless disregard, the City of Jackson Defendants are not liable to Plaintiff.  *See also City of Jackson v. Gardner*, 108 So. 3d 927, 928-929 (Miss. 2013).

---

[14]Generally speaking, the immunity provided by the MTCA is a question of law.  *See City of Laurel v. Williams*, 21 So.3d 1170, 1174 (Miss. 2009).

## A.    No reckless disregard.

However, assuming, *arguendo*, that Plaintiff properly alleges reckless disregard as required by the MTCA, Plaintiff has not pleaded and cannot show any conduct by Booth that "exceeds gross negligence and embraces willful and wanton conduct." *City of Jackson v. Gardner*, 108So. 3d 927,928-929 (Miss. 2013). In Mississippi, the "reckless disregard" standard is extremely high, and goes beyond that of gross negligence. *See City of Laurel v. Williams*, 21 So. 3d 1170, 1174 (Miss. 2009). The reckless disregard standard "embraces willful and wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Id.*, citing *Phillips v. Mississippi Dept. of Public Safety*, 978 So. 2d 656, 661 (Miss. 2008). Simply put, any negligence or gross negligence, if it had occurred by Booth individually, even if proven by the Plaintiff, would still not entitle Skinner to any recovery. It is apparent in the language of the MTCA that police officers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well being of others, will be entitled to immunity.[15]

It is undisputed that (1) the City is a political subdivision of the State of Mississippi, and (2) on the date of July 1, 2007, Booth did not use OC spray on Skinner or strike Skinner causing him any injury. In fact, Plaintiff does not specify any physical contact between Booth and Skinner, other than handcuffing Skinner and transporting him to the Hinds County Detention facility. Moreover, reckless disregard occurs when the *subject conduct involved* evinces not only some appreciation of the unreasonable risk involved, but also a deliberate indifference of that risk and the high probability of harm involved. *City of Laurel v. Williams*, 21 So. 3d at 1175 (Miss. 2009). A determination of

---

[15]*See also McGrath v. City of Gautier*, 794 So. 2d 983, 985 (Miss. 2001).

reckless disregard requires the nature of the officer's actions to be judged on an objective standard *with all factors they were confronted with*.  *Id.*, *see also Phillips v. Mississippi Dept. of Public Safety*, 978 So. 2d  at 661 (Miss. 2008) and *City of Jackson v. Powell*, 917 So.2d 59,71 (Miss. 2005)(emphasis supplied).  In Mississippi, the objective standard by which an officer's actions are judged include the fact that officers must make split-second decisions.[16]  Of course, in this case, Booth was responding to a call for service regarding domestic violence, and encountered an intoxicated, armed, white male that had been arguing with the female making the call for service, as well as observing the condition of the premises indicating a physical dispute had indeed occurred. *See* pp. 29-30, Booth Deposition, Exhibit "17" to Motion; *see also* Exhibits "1" through "8" to Motion.

As it relates to any claim of vicarious liability-*respondeat superior* made by Plaintiff against the City of Jackson Defendants, this claim also fails because Booth was acting within the course and scope of his employment as a Jackson Police Officer, and did not commit any willful or wanton conduct against Skinner in his employment with the City.  Under the MTCA, there is no "personal liability" for individual police officers, as the nucleus of such a claim involves reckless disregard by police officers *who are acting within the course and scope of their employment **with the municipality***. *See* Miss. Code Ann. § 11-46-7(1)(emphasis supplied).  There is no personal liability for individual officers under the MTCA where they are acting in the course and scope of their employment with the City.

---

[16]Mississippi Courts look at the totality of the circumstances when considering whether someone acted with reckless disregard to public safety, also taking into account the fact that law enforcement officers must make split-second decisions.  *See City of Greenville v. Jones*, 925 So.2d 106,110 (Miss. 2006); *City of Jackson v. Powell*, 917 So.2d 59,71 (Miss. 2005); *City of Ellisville v. Richardson*, 913 So.2d 973,978-979 (Miss. 2005) and *City of Jackson v. Brister*, 838 So. 2d 274, 279 (Miss. 2003).

**B.      Plaintiff's claims barred by failure to provide pre-suit notice.**

The record before this Court shows that Plaintiff failed to comply with the notice of claim statute contained in the MTCA.  Absent such compliance, Skinner cannot pierce the immunity provided to the City of Jackson Defendants by the MTCA.   In fact, in a summary judgment proceeding such as this, Skinner, as the plaintiff,  must rebut the City of Jackson Defendants' claim that no genuine issue of material fact exists,  by producing supportive evidence of significant and probative value showing that the City of Jackson Defendants are not immune from suit.  *See  Palmer v. Biloxi Regional Medical Center*, 564 So. 2d 1346, 1356 (Miss. 1990)(prohibiting a party opposing summary judgment from reliance upon "unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda").  Alternatively stated, Skinner has the burden of proof, and must show that the immunities provided to the City of Jackson Defendants by the MTCA are not applicable.  *See also   Morton v.  City of Shelby*, 984 So. 2d 323 (Miss. App. 2007).[17]  In the case at bar, Skinner cannot rebut any of the immunities provided to Booth and the City of Jackson Defendants and show a genuine issue of any material fact.

Once again, governmental entities such as the City are provided sovereign immunity for claims that such entities committed "wrongful or tortuous acts or omissions."  *See also Strange v. Itawamba County School District*, 9. So.3d 1187, 1198 (Miss. App. 2009) and Miss. Code Ann. § 11-46-3(1). One requirement imposed on plaintiffs seeking recovery against a government entity

---

[17] In that case, the Mississippi Supreme Court stated that "[u]nder the Mississippi Tort Claims Act, 'the plaintiff has the burden of proving 'reckless disregard' by a preponderance of the evidence.'" *Id.* at 330 (internal citations omitted).  Accordingly, in that case, the Plaintiff Morton (like Barks in the instant matter), did not bear his burden of proof and show reckless disregard.The Mississippi Supreme Court affirmed the trial court's decision granting summary judgment as there was no genuine issues as to whether the immunity provided by Miss. Code Ann. § 11-46-9 applied to the defendants, the City of Shelby, Mississippi and a member of its police department.

with sovereign immunity is the filing of pre suit notice.  Mississippi law clearly provides that a

plaintiff such as Skinner, file the statutorily required notice.[18]  Miss. Code Ann. § 11-46-7(1)(Rev.

2002), states that "any claim made or suit filed against a governmental entity" to recover damages,

"**shall be brought only under the provisions of this chapter**..." (Emphasis supplied).  The filing

of a pre-suit notice is not a choice given to a plaintiff, it is required.  In this instance, however,

Skinner did not comply, substantially or otherwise, with the pre-suit notice filing required by the

MTCA.  As a result, the City of Jackson Defendants are  entitled to immunity on this ground as well

and to an award of judgment as a matter of law in each Defendant's favor.

### C.    Inmate exemption (Miss. Code Ann. § 11-46-9(1)(m)) bars any recovery against Booth.

Several of the exceptions to the waiver of sovereign immunity by a governmental entity  are

set forth in section 11-46-9 of the Mississippi Code.  Specifically, Section (1)(m)  provides, in

pertinent part, that:

> (1) A governmental entity and its employees acting within the course and scope of
> their employment or duties shall not be liable for any claim:
>
>> (m) Of any claimant who at the time the claim arises is an inmate of
>> any detention center, jail, workhouse, penal farm, penitentiary or
>> other such institution, regardless of whether such claimant is or is not
>> an inmate of any detention center, jail, workhouse, penal farm,
>> penitentiary or other such institution when the claim is filed.

---

[18]In general, Mississippi's notice of claim statute has two principle parts, one containing a tolling period
and the second setting forth the requirements that a claimant provide certain factual information, the method of
service and the method of delivery. *See* Miss. Code Ann. § 11-46-11(1) and (2). A plaintiff is not afforded any relief
if it does not substantially comply with the notice statute.  See also *Fairley v. George County*, 871 So. 2d 713 (Miss.
2004). Here, it is undisputed that  Skinner  failed to deliver any pre suit notice containing the necessary information,
and that there was no delivery by the method set forth by statute,  to the City. Accordingly, the Plaintiff's claims are
barred for its non-compliance with Miss. Code Ann. § 11-46-11.

*Phillips v. Monroe County*, 143 F. Supp. 2d 663, 669 (N.D. Miss. 2001), citing Miss. Code Ann. § 11-46-9 (1)(m) (Supp. 2000).[19]   Here, it is undisputed that the Skinner was an inmate of a jail or penitentiary at the time of his injuries.  *See also* Dock. 150. As such, the Plaintiff's state-law and any negligence claims against the City of Jackson Defendants are effectively barred by section 11-46-9(1)(m) of the Mississippi Code.   The City of Jackson Defendants are therefore entitled to an entry of judgment as a matter of law on the Plaintiff's state law claims.

## Conclusion

Based on the foregoing and controlling Federal and State statutory and case authority, Plaintiff cannot recover from Booth.  Summary judgment in favor of the City of Jackson Defendants is therefore mandated under the Federal Rules of Civil Procedure.  Accordingly, the City of Jackson Defendants request that this Court enter its order granting their Motion for Summary Judgment and dismiss all of Plaintiff's claims against them.  Finally, the City of Jackson Defendants request any and all other relief to which they are entitled.

**WHEREFORE,** the City of Jackson Defendants respectfully requests that this Court enter its order granting them summary judgment in their and against William Skinner on all claims. Finally, the City of Jackson Defendants request and all other relief to which they may be entitled.

---

[19] See also *Harvison v. Greene County Sheriff Dep't*, 899 So. 2d 922 (Miss. Ct. App. 2005), holding inmate's state claims were barred pursuant to Miss. Code Ann. § 11-46-9(m) because the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to 11-46-23, specifically excluded claims arising under state law while a person was lawfully incarcerated in a penal facility; *Webb v. DeSoto County*, 843 So. 2d 682 (Miss. 2003), holding that Miss. Code Ann. § 11-46-9(1)(m) clearly barred the parents' wrongful death suit against the county and individuals after the death of their son while he was incarcerated in the county detention center; since § 11-46-9(1)(m) provided the decedent with no remedy, it also prevented a suit by the heirs, and the parents were unable to bring a wrongful death suit on behalf of a prisoner who died while incarcerated and *Wallace v. Town of Raleigh*, 815 So. 2d 1203 (Miss. 2002), finding that Legislature expressly stated the governmental entity would be immune from all liability from any claim of any claimant who was an inmate at the time the claim arose; an inmate remained an inmate while being transported, while participating in public service work programs or while on leave if a pass was granted.

**THIS**, the 15th day of November, 2013.

Respectfully submitted,

**CITY OF JACKSON, MISSISSIPPI, AND KEITH BOOTH, IN HIS OFFICIAL CAPACITY AS A FORMER JACKSON POLICE OFFICER**

**"CITY OF JACKSON DEFENDANTS"**

By: /s/   Lara E. Gill
          Lara E. Gill

OF COUNSEL:

Lara E. Gill, Deputy City Attorney II
Gregory Burnett, Deputy City Attorney
**OFFICE OF THE CITY ATTORNEY**
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
601.960.1799 telephone
601.960.1756 facsimile
lgill@city.jackson.ms.us
*Attorneys for the City of Jackson Defendants*
*and Keith Booth*

31

## CERTIFICATE OF SERVICE

       I, Lara E. Gill, one of the attorneys for the City of Jackson Defendants and Keith Booth, do hereby certify that I have this day delivered a true and correct copy of the above and foregoing document to the following:

       Charles R. McRae, Esq.
Greta Kemp, Esq.
CHUCK MCRAE LAW OFFICE
416 E. Amite Street
Jackson, Mississippi 39201
601.944.1008 telephone
866.236.7731 facsimile
chuck@mcraelaw.net
greta@mcraelaw.net

       James N. Scarff, II Esq.
THE SCARF LAW FIRM
Post Office Box 4982
Jackson, Mississippi 39296
601.278.9450 telephone
866.945.9168 facsimile
scarfflawfirm@gmail.com

       J. Lawson Hester, Esq.
Jackson, Esq.
WYATT TARRANT & COMBS-Jackson
Post Office Box 16089
Jackson, Mississippi 39236-6089
601.987.5300 telephone
601.987.5353
lhester@wyattfirm.com
jdare@wyattfirm.com

       **THIS**, the __15th__ day of __November__, 2013.

                                  By: /s/   Lara E. Gill _____
                                       Lara E. Gill