UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILLIAM B. SKINNER                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:10cv358-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, et al.                                    DEFENDANTS


ORDER

This § 1983 action is before the Court on a number of dispositive motions:  the City of

Jackson Defendants' Motion for Summary Judgment [154], Keith Booth's Motion for Summary

Judgment [158], the Motion for Summary Judgment filed by the Hinds County Defendants [162],

and the Hinds County Defendants' Motion to Strike and/or Exclude Articles from News Media

[165].  Because the Court finds genuine issues of fact for trial on Skinner's excessive-force claim

against Booth, his motion is granted in part but otherwise denied.  Similarly, the motion to strike

is granted in part.  But because Skinner has not established any basis for municipal liability, the

City of Jackson's and Hinds County's motions for summary judgment are granted.

I.      Facts and Procedural History

This case involves various alleged constitutional violations that occurred between July 1

and August 23, 2007.  On July 1, 2007, the Jackson Police Department received a call on a

domestic dispute, and Officers Keith Booth and Anthony Gagnard responded.  When the officers

arrived at the home where Plaintiff William B. Skinner was living with his on-again, off-again

girlfriend, Darlene Sumrall, they encountered Sumrall outside the residence.  Sumrall told the

officers that she and Skinner had been in an argument, and the officers observed that it appeared

she had been assaulted.  Sumrall also disclosed that Skinner was in the bedroom at the back of

the house and that he had multiple guns with him.  The officers entered the house, where they noticed lamps and furniture knocked over and in disarray, and proceeded to Skinner's bedroom.

Upon approaching Skinner's bedroom, Booth and Gagnard noticed Skinner sitting on his bed with a shotgun in his hand.  Skinner, who admits that he had been drinking on July 1 and was intoxicated at the time of his arrest, says he had been cleaning the shotgun when the officers approached.  Booth testified that Skinner "raised his shotgun at" Booth, and at that time, Booth and Gagnard drew their weapons.  Booth Dep. [156-1] 26.  For his part, Skinner denies that he pointed the gun at the officers, instead explaining that the gun "was up in the air."  Skinner Dep. [156-2] 93.  In any event, Booth instructed Skinner to put down the weapon, and Skinner complied, though the parties dispute how quickly.

Booth claims that he then began "leading [Skinner] outside" and "Skinner got irate, got to snatching," so Gagnard sprayed Skinner with pepper spray and the officers "subdued him" and placed him in handcuffs.  *Id.* at 41.  Again, Skinner tells a different story.  According to him, once he relinquished the gun, he "was forcibly taken down to the ground where [he] was hogtied," unnecessarily sprayed with mace, and beaten though he did nothing to resist arrest. Skinner Dep. [156-2] 12, 93.

Booth arrested Skinner on charges of felon in possession of a firearm, simple assault, and domestic violence.  Booth then transported Skinner to the Hinds County Detention Center ("HCDC").  Upon arriving at HCDC, Booth warned Hinds County Deputy Lurenza Clincy to be careful with Skinner, whom Booth described as "combative," informed Clincy that Skinner had pointed a shotgun at police at his home, removed Skinner's handcuffs, and left Skinner in Clincy's custody for intake.

2

During intake, Skinner allegedly yelled racial slurs at Clincy, a struggle ensued, Deputy Milton Reed sprayed Skinner with mace, and Clincy and Reed physically restrained Skinner. They then placed Skinner in a general-population cell where he hurled racial slurs at other detainees and was beaten.  Clincy and Reed removed Skinner from the holding cell and placed him in isolation and eventually in a suicide-watch cell.

At some point on July 1, 2007, Skinner filled out a health-services request form, indicating that he had suffered head trauma.  The following morning, Skinner was seen by medical at HCDC and complained of a headache and a skin abrasion on his knee.  Skinner testified that over the next several days, his leg injury worsened and by July 6, his knee was swollen and he was unable to walk.  He was seen by nurses during this time, but by the morning of July 17, 2007, HCDC medical personnel transferred Skinner to Central Mississippi Medical Center ("CMMC") where he was diagnosed with necrotizing faciitis and underwent treatment for same, including debridement surgery.  Skinner remained at CMMC until his discharge back to HCDF on August 22, 2007.

On June 28, 2010, Skinner filed this lawsuit against Hinds County, the Hinds County Sheriff Department, Sheriff Malcolm McMillan in his official and individual capacities, the City of Jackson, Deputies Reed and Clincy in their official and individual capacities, and Officer Booth in his official and individual capacities.  Skinner brought the following claims related to his arrest and detention:  § 1983 claims asserting violation of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; a § 1985 conspiracy claim; a claim against the Hinds County Defendants for failure to prevent conspiracy; a claim against the Hinds County Defendants for failure to train and/or supervise; and state claims for battery, assault, civil conspiracy, breach of

fiduciary duty, the tort of outrage, intentional infliction of emotional distress, and slander and slander per se.

Following some immunity-related discovery, on September 29, 2011, the Court dismissed the individual-capacity claims against McMillan.  On September 7, 2012, the Court granted in part a motion for summary judgment brought by Reed and Clincy in their individual capacities, dismissing the state-law and excessive-force claims against those defendants but denying qualified immunity as to the failure-to-protect claim.  After an unsuccessful interlocutory appeal of the partial denial of qualified immunity, on October 17, 2013, the Court entered an order dismissing the state-law and punitive-damages claims against Hinds County, as well as all claims against the Hinds County Sheriff Department.

After disposition of the foregoing motions, the claims that remain include:  Skinner's § 1983 failure-to-protect claim against Reed and Clincy in their individual capacities; the federal claims against the Hinds County Defendants;[1] and the state and federal claims against the City of Jackson and Booth in his official and individual capacities.  On November 15, 2013, the instant dispositive motions were filed.  The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment,

---

[1]The Hinds County Defendants include McMillan, Reed, and Clincy in their official capacities.

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Rule 56(c)(1) states that a party asserting that a fact "is genuinely disputed must support the assertion by: (A) *citing* to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added). And Rule 56(c)(3) now states that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Finally, "[i]f a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3).

5

Skinner has violated Rule 56(c) in essentially every summary-judgment response he has filed, prompting the Court to twice warn him that factual assertions must be supported with cites to the particular parts of the record under Rule 56(c).  *See* Sept. 29, 2011 Order [93] at 3–4; Sept. 7, 2012 Order [99] at 4.  Yet despite those warnings, all three of Skinner's memoranda addressed in this Order suffer from the same lack of cited record evidence.  As more precisely addressed below, the Court will again overlook the deficiency as to one of the motions, but as to other motions, the Court will now enforce Rules 56(c)(3) and 56(e)(3) and grant summary judgment.

III.    Analysis

A.    Booth's Motion

Booth, in his individual capacity, has moved for summary judgment on the claims against him.  He seeks qualified immunity on the federal claims and immunity under the Mississippi Tort Claims Act for the state-law claims.[2]

1.    Qualified Immunity Standard

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

---

[2]The Court reminds Booth and the City of Jackson to comply with Local Uniform Civil Rule 7(b)(5) ("Movant's original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages . . . .").

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hamptom v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). In the summary-judgment posture the Court "'looks to the evidence before it (in the light most favorable to the plaintiff.)'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id.* (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the Court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Finally, it is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 555

U.S. 223, 236 (2009)).  In particular, *Pearson* observed that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  555 U.S. at 237.

        2.       Federal Claims Against Booth

Skinner asserted a number of Fourth Amendment claims against Booth in his Amended Complaint, including claims based on excessive force, entry of the residence without warrant or probable cause, and wrongful arrest related to the felon in possession of a firearm charge.  Am. Compl. [72] ¶¶ 12, 17.  But in response to Booth's motion, Skinner focused his entire legal argument on the excessive-force claim, thereby abandoning his other federal claims against Booth.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment.").[3]

That leaves the excessive-force claim.  Although Skinner fails to support any of his factual assertions with citation to the record, the Court is already aware of relevant record evidence and elects to exercise its discretion under Rule 56(c)(3) to consider the uncited materials.  Based on that review, the Court finds a question of fact whether the force was excessive.

There is no dispute Booth seized Skinner.  So to avoid qualified immunity on his Fourth Amendment excessive-force claim, Skinner must show that he suffered "(1) an injury that (2)

--------

[3]Skinner mentions in passing that the entry was "without warrant or probable cause." Pl.'s Mem. [177] at 7.  He also says Booth added a charge that proved incorrect. *Id.* at 8. Skinner provides no legal argument or record evidence to support either of these conclusory statements, neither of which are sufficient under Rule 56(c).  And as to the entry claim, the facts are essentially the same as those in *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (finding no Fourth Amendment violation when a cotenant gave permission while the defendant was asleep in a nearby room).

resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

Here, Skinner claims Booth used excessive force by "forcibly tak[ing him] down to the ground where [he] was handcuffed and more or less hogtied, dragged outside."[4]  Skinner Dep. [156-2] 12.  He further states that during this encounter they "beat me," *id.*, and that he was "hit up on."  *Id.* at 96.  Skinner asserts that this treatment caused him injuries "to his leg and body."  Pl.'s Mem. [177] at 7.  And though he fails to cite the record for the claimed injury, the injury issue folds into the force issue under Fifth Circuit precedent leaving "only one inquiry . . . to determine whether an officer used excessive force in violation of the Fourth Amendment."  *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)).  As explained in *Brown*, "even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."  *Id.*

The key dispute in this case rests in the conduct leading to the use of force.  Booth testified that Skinner "got irate, got to snatching," and the officers had to subdue him.  Booth Dep. [156-1] 41.  This account is corroborated by Officer Gagnard's Use of Force Report, in which he explained that once Skinner relinquished the handgun, Booth grabbed Skinner's arm, and Skinner "pulled away and began to struggle with Officer Booth."  Use of Force Report [154-2].  Gagnard goes on to state that he then "administered one three-second burst of OC spray on

---

[4]Skinner also complains that the use of pepper spray was unnecessary, but it is undisputed that Officer Gagnard—not Booth—sprayed Skinner with pepper spray.

[Skinner's] face," and that Skinner "quickly ceased the struggle and [the officers] were able to get [Skinner] to the floor and handcuffed him."  *Id.*

Had these been the only accounts of the incident, then Booth would surely receive qualified immunity.  But Skinner disputes these assertions and claims that he "in no way resisted arrest" or did anything "that would lead the officer to believe that [he was] resisting arrest." Skinner Dep. [164-7] 95 (punctuation altered).  He also claims that he "immediately" put the gun down when the officers entered the room; "willingly" went with the officers; and never "act[ed] in disorderly conduct [sic] in any way . . . ."  *Id*.  Skinner claims that despite his compliance he was beaten and hogtied.  Skinner's ability to remember the facts was undeniably impaired, but the Court may not weigh the evidence or the credibility of the witnesses.  If a jury accepts Skinner's version of the facts as true, then it could conclude that the force used was unnecessary and not objectively reasonable.  Given this question of fact, Booth's motion for summary judgment on the excessive-force claim is denied.

### 2.    State-Law Claims

Booth has moved to dismiss Skinner's state-law claims against him in his individual capacity based on various provisions of the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 *et seq*.  Skinner does not dispute the application of the MTCA defenses, instead arguing that Booth waived the affirmative defenses under Mississippi law.  He then cites a number of Mississippi cases finding that defendants waived MTCA defenses.  Pl.'s Mem. [177] at 9–10.

Skinner would be correct under Mississippi law.  But "substantive state law determines what constitutes an affirmative defense[, whereas] . . . 'the Federal Rules of Civil Procedure

10

provide the manner and time in which defenses are raised and when waiver occurs.'"

*Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (citing

*Morgan Guar. Trust Co. of New York v. Blum*, 649 F.2d 342, 344 (5th Cir. 1981)); *see also*

*Bryant v. Wyeth, Inc.*, 816 F. Supp. 2d 329, 332 (S.D. Miss. 2011) ("[P]laintiff's reliance on

Mississippi case law on the subject of waiver is misplaced.").

Under Federal Rule of Civil Procedure 8(c), an affirmative defense "is not waived if the

defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not

prejudiced in its ability to respond.'"  *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th

Cir. 2009) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983)).  There can

be no doubt that Booth—who asserted his MTCA defenses in his answer to the Amended

Complaint—raised the defenses in a procedurally proper and sufficient manner under Rule 8(c).

There is no waiver, and Booth is entitled to summary judgment on the state-law claims.  *See*

*Acadia Ins. Co. v. Hinds Cnty. Sch. Dist.*, No. 3:12–CV–188–CWR–LRA, 2013 WL 2182799, at

*4 (S.D. Miss. May 20, 2013) (applying federal law to argument that defendant waived MTCA

defense).

     B.     The City's Motion

          1.     Federal Claims

For a municipality like the City of Jackson to be liable under § 1983, the plaintiff must

establish "three elements:  a policymaker; an official policy; and a violation of constitutional

rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d

567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

"[T]he unconstitutional conduct must be directly attributable to the municipality through some

sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (footnote and citations omitted).

Skinner makes no effort to specifically identify a policymaker, official policy, or custom, and he makes no showing that a particular policy or custom was the moving force behind a constitutional violation as he must to avoid summary judgment. *Id.* He likewise fails to cite any record evidence on any of these essential elements and instead generically states that "support of the Plaintiff's allegations is peppered throughout court-filed documents and in the extensive discovery." Pl.'s Resp. [176] at 8.

This response amounts to no response at all. As noted above, Skinner has been twice cautioned that he must cite "particular parts" of the record supporting his claims. Fed. R. Civ. P. 56(c). He did not, directing the Court instead to essentially every document filed in the record and produced during discovery. In addition, Skinner was required to "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Again, no such analysis was provided.

The Court is aware of no evidence establishing all of the essential elements of this claim and declines an independent search. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (holding that trial court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment" (citation omitted)). Skinner has not demonstrated a genuine issue of fact. *See* Fed. R. Civ. P. 56(e)(3). The federal claims against the City are therefore due for dismissal.

12

2.      State-Law Claims

For the same reasons that apply to the individual-capacity state-law claims against Booth, the City is entitled to summary judgment on Skinner's state-law claims against it.

C.      The Hinds County Defendants' Motion

It is somewhat difficult to determine which of the § 1983 claims in the Amended Complaint Skinner continues to pursue against the Hinds County Defendants.  Nevertheless, he limits his legal analysis to claims related to the alleged lack of medical care.  The Court therefore addresses those claims finding the others abandoned.  *See Black*, 461 F.3d at 588 n.1.

1.      Official-Capacity Claims

Hinds County first asserts that the official-capacity claims against McMillin, Reed, and Clincy should be dismissed without prejudice.  It is well-settled that a claim against an official in his official capacity "is not a suit against the official but rather is a suit against the official's office" and is therefore "no different from a suit against the [municipality] itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).  Dismissal without prejudice of the official-capacity claims is therefore appropriate.  *Klinger v. Univ. of S. Miss.*, No. 2:12cv150-KS-MTP, 2013 WL 6328852, at *8 (S.D. Miss. Dec. 5, 2013).

2.      Medical-Care Claims

Skinner primarily argues that Hinds County violated his Fourteenth Amendment right to be protected from punishment in the form of denial or delay of medical care during his detention at HCDC.  *See Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206 (5th Cir. 2011) ("Because a state may not punish a pretrial detainee, conditions of confinement for such an inmate that amount to 'punishment' violate the Constitution.").  "Constitutional challenges by pretrial detainees may be

brought under two alternative theories:  as an attack on a 'condition of confinement' or as an 'episodic act or omission.'"  *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996)).  In an episodic-act case, "the detainee complains . . . of a particular act of, or omission by, [an] actor."  *Id.*  Where the plaintiff's claim does not focus on any particular act or omission, but instead asserts that "a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest," the claim is one for an unlawful condition of confinement.  *Duvall*, 631 F.3d at 207.

        In response to Hinds County's motion for summary judgment, Skinner never directly states which alternative he will pursue, but his focus on "consistent, reprehensible conditions" suggests that he attacks the conditions of confinement.  Pl.'s Mem. [171] at 7.  He later mentions the term "condition of confinement" as part of his argument while offering no arguments or analysis based on episodic acts.  *Id.* at 9–10.  The Court therefore addresses conditions of confinement finding any other claims abandoned.  *See Black*, 461 F.3d at 588 n.1.[5]

        To establish a conditions-of-confinement claim, a plaintiff must prove "the existence of an identifiable intended condition or practice that was not reasonably related to a legitimate governmental objective."  *Shepherd*, 591 F.3d at 455 (quoting the district court's jury instructions) (internal quotation marks omitted).  A practice "may be either an established rule or restriction or acts or omissions sufficiently extended or pervasive . . . to prove an intended condition or practice."  *Id.* (quoting the district court's jury instructions) (internal quotation

_____

        [5]Even if asserted, Skinner has not supported an episodic act claim with competent record evidence.

14

marks omitted).  And as with the rest of the claims for municipal liability, Skinner must establish

that the policy or custom was "adopted or maintained with objective deliberate indifference to

the [plaintiff]'s constitutional rights."  *Hare*, 74 F.3d at 649 n.4 (cited in *Olabisiomotosho v. City*

*of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)).  Skinner fails support these elements.

First, Skinner has not pointed to any "explicit policy" that led to his injury.  *See Scott v.*

*Moore*, 114 F.3d 51, n.2 (5th Cir. 1997) (collecting conditions-of-confinement cases involving

explicit policies such as disciplinary segregation, denial of privileges, and overcrowding); *see*

*also Shepherd*, 591 F.3d at 453 (explaining that pretrial detainee established a policy of

inadequate treatment for inmates with chronic illness by presenting "extensive independent

evidence on the jail's treatment of inmates with chronic illness," including "a comprehensive

evaluative expert report commissioned by the County, [a] DOJ report, affidavits from employees

of the jail and its medical contractor attesting to the accuracy and applicability of the reports, and

a plethora of additional documentary evidence").

Second, Skinner has failed to show a "pervasive pattern of serious deficiencies in

providing for . . . basic human needs" so as to constitute punishment.  *Shepherd*, 591 F.3d at 454.

Skinner attempts to meet this burden by citing to "news articles attached to the First Amended

Complaint which clearly outline[] a pattern of similar conduct."  Pl.'s Mem. [171] at 9.  But a

non-moving party must support its position with evidence that could be admitted into evidence.

Fed. R. Civ. P. 56(c)(1)(B).  "[N]ewspaper articles [are] classic, inadmissible hearsay."  *Roberts*

*v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (rejecting attempt to use newspaper

articles to show a pattern of unconstitutional activity necessary to prove deliberate indifference);

*see James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008) ("Newspaper articles, however,

are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay.").

Skinner then tries to bolster his hearsay evidence by citing the depositions of Dan Gibson and Malcolm McMillin.  Pl.'s Mem. [171] at 9.  But he fails to attach either deposition to his response, and the only depositions the Court could find docketed elsewhere in the record for these witnesses did not support the argument—at least not on the cited pages.  *See* Pl.'s Resp. [89] Ex. A (Gibson Dep. at 10–12); Pl.'s Resp. [82] Ex. E (McMillin Dep. at 130–32).

Skinner also asserts that on July 2, 2007, he was placed in "an overcrowded cell, forcing him to sleep on concrete under unsanitary conditions."  Pl.'s Mem. [171] at 4.  While such facts might suggest a problematic condition of confinement, he would have to establish some basis for municipal liability.  Regardless, Skinner cites no record evidence supporting this factual assertion.  And though the Court was under no duty to search the record for evidence supporting his claim, it did so without success on this point.  Skinner has not shown a policymaker, policy/custom, or deliberate indifference.  His conditions-of-confinement claim fails.

Finally, Skinner makes the separate point that Hinds County "pressured his physicians to release him from the hospital" before his treatment was concluded.  Pl.'s Mem. [171] at 11.  To the extent that this allegation states a colorable constitutional claim, it is unsupported by the record evidence.  Skinner cites only Exhibit N to the Amended Complaint for this proposition, but that exhibit is a single, unauthenticated page from Skinner's physician's orders from CMMC, and the only reference to Hinds County on it is an August 20, 2007 order to send copies of pertinent medical records to the HCDC.  Physician's Orders [72-14].  And even assuming record

evidence exists, Skinner has not shown that the County should be liable for this alleged act. Hinds County is entitled to summary judgment on the medical-care claims.

4.      Failure-to-Train Claims

Skinner seems to recognize the lack of evidence supporting a conditions-of-confinement claim and therefore states that "a good majority of Plaintiff's claims are premised on the County Defendants' lack of training." Pl.'s Resp. [171] at 7. He then generally asserts that some unspecified inadequacy in Hinds County's training procedures caused the alleged constitutional violations.

To succeed on a failure-to-train claim, a plaintiff must show that "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) (citations omitted).

To meet these standards, the plaintiff "must allege with specificity how a particular training program is defective," and "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citations omitted). Finally, "if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the "usual and recurring situations" faced by jailers and peace officers.'" *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009) (citing *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

17

Here, Hinds County has submitted unrebutted evidence that the training policies and procedures in effect in 2007 "met the minimum standards required by Mississippi." Defs.' Mem. [180] at 4 (citing Van Egmond Aff. [164-5]). Skinner responds by arguing that the County has failed to prove that the State's minimum standards are adequate. Pl.'s Resp. [171] at 8. But that is not the Defendants' burden. *See Benavide*s, 955 F.2d at 973 (observing that plaintiff has the burden of showing "that this legal minimum of training was inadequate"). Skinner points to no evidence suggesting that the County's training is somehow inadequate, and he does not "describe[] the training that the deputies allegedly lacked that was necessary for adequate job performance." *Id.*

The only other "evidence" Skinner offers to prove that the lack of training caused a lack of adequate medical care is this Court's holding that Defendants Clincy and Reed "had acted with deliberate indifference" when they placed Skinner in a holding cell with other inmates who then beat him. Pl.'s Resp. [171] at 10.[6] Skinner contends that this finding "alone blazes the trail that these deputies suffer from a lack of training . . . ." *Id.* But it is not apparent how the events upon his arrival establish a failure to train regarding his subsequent medical care. And even if they did, this single act would not establish a basis for municipal liability. Hinds County is entitled to summary judgment on the failure-to-train claim.

5.      § 1985 Conspiracy Claim

Finally, Skinner persists in his § 1985 conspiracy claim against Hinds County, asserting that "the County Defendants have acted with the Municipal Defendants to essentially 'teach the

---

[6]More precisely, the Court found a question of fact on that issue. *See* Sept. 9, 2012 Order [99] at 11.

Plaintiff a lesson' from his initial arrest through his trial . . . ."  Pl.'s Mem. [171] at 13.  But Skinner again fails to cite *any* record evidence supporting his conclusory arguments.  He likewise fails to suggest—much less prove—that the alleged conspiracy was aimed at him based on "a class-based animus."  *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).  Skinner's § 1985 claim fails.

D.      Motion to Strike

The Hinds County Defendants also filed a motion "to strike any and all reference in the record and/or from evidence any and all articles generated by any news media related to the claims alleged by Plaintiff."  Mot. [165] at 1.  To the extent Hinds County seeks to have the articles excluded from the summary-judgment record, the motion is granted.  To the extent Hinds County seeks to have the articles stricken from the docket entirely under Rule 12(f), the Court concludes that such drastic relief is unnecessary.  *See Solis v. Bruister*, No. 4:10cv77-DPJ-FKB, 2012 WL 776028, at *4 (S.D. Miss. Mar. 8, 2012).  The Court's ruling on this issue is without prejudice to the right of any party to challenge the admissibility of evidence through a motion in limine or at trial.

IV.     Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, the City of Jackson Defendants' Motion for Summary Judgment [154] is granted; Keith Booth's Motion for Summary Judgment [158] is granted in part and denied in part; the Motion for Summary

Judgment filed by the Hinds County Defendants [162] is granted; and the Hinds County

Defendants' Motion to Strike and/or Exclude Articles from News Media [165] is granted in part.

      **SO ORDERED AND ADJUDGED** this the 29th day of January, 2014.

                               s/ *Daniel P. Jordan III*            
                               UNITED STATES DISTRICT JUDGE